## ELIZ. J. McKENDRY v. WILLIAM McKENDRY.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1889—Decided January 6, 1890.
[To be reported.]

1. Under the provisions of the act of April 11, 1848, P. L. 536, securing to married women the full use and enjoyment of their separate property, it may well be that a common law action by a wife against her husband to recover such property is not authorized.*

2. But, independently of § 3, act of April 11, 1856, P. L. 315, authorizing such action in cases of desertion or divorce, the Court of Common Pleas, under § 13, par. V., act of June 16, 1836, P. L. 790, has jurisdiction in

---

* As to the scope of the act of June 3, 1887, P. L. 332, cf. Small v. Small, 129 Pa. 366.

equity to restrain a husband from unlawfully depriving his wife of the use and enjoyment of her separate estate.

3. And if a husband, while his wife is living separate from him, has taken and retained possession of her real estate, not in pursuance of any arrangement with her, but against her will and consent, she may maintain against him an action of ejectment for its recovery, treating it as a substitute for a proceeding by bill in equity.

4. In such action, the record of the conviction of a third person, in the Court of Quarter Sessions, upon an indictment charging adultery with the ejectment plaintiff, is properly excluded; the plaintiff not having been a party to that proceeding. its record is inadmissible to affect her in this.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 10 October Term 1889, Sup. Ct.; court below, No. 448 June Term 1887, C. P. No. 1.

On April 28, 1887, Elizabeth J. McKendry by her mother and next friend, Matilda B. Thompson, brought ejectment against William McKendry and John Fessler, a tenant under him, to recover a tract of 86 acres of land in Moon township. Issue.

At the trial on May 3, 1888, it was admitted that the legal title to the property in dispute was in the plaintiff, who was the wife of William McKendry, the defendant. The facts then made to appear, so far as material to this report, were as follows:

Up to April 1, 1886, Mr. and Mrs. McKendry were living together at a house known as the Mark's house, possession of which they then surrendered, Mrs. McKendry going to the home of her mother, Mrs. Thompson, until they could have the house upon her own farm, the property in dispute, put in order for their occupancy. In May, 1886, they were together upon the property in dispute, engaged for several days in putting it in order and preparing a garden, then intending to make their home upon it. They put some goods into the house. Soon after, however, difficulties arose between them, and Mrs. McKendry remained with her child at the home of her mother, the key of the house, the goods previously placed there having been removed, being left by her in the custody of a Mr. Neely. In the fall of the year, Mrs. McKendry made an agreement with a tenant to lease the property to him from April 1, 1887,

Charge of Court below.

but in November, 1886, her husband obtained the key from the
neighbor who had it, and kept it, declaring that no person
could move on that place, because he had possession of it, and
if any one would come upon it he would put him off. About
April 1, 1887, Mr. McKendry took actual possession of the
property and put into it the family of Mr. Fessler, and a Mr.
McCloskey, who was living with them.

Testimony having been introduced to show that Mrs. Mc-
Kendry had refused to live with her husband upon the pro-
perty, alleging as her excuse that her mother was an invalid
and needed her care, the defendant offered in evidence the ex-
emplification of a record from the Court of Quarter Sessions
of Beaver county, to No. 10 December Term 1886, Q. S., show-
ing that on December 9, 1886, upon an indictment based upon
the information of Mr. McKendry, one Jerome Prosser was
convicted of adultery with Mrs. McKendry, the plaintiff in
this case, and after conviction was sentenced for the said of-
fence : This for the purpose of showing that the excuses of the
plaintiff were frivolous and a mere pretence, and that at this
time she had deserted her husband and committed the offence
with which Prosser was charged, thus showing that she had
left her husband without cause and without provocation.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[5]

The offer was then renewed by the defendant, to be followed
by proof that Lizzie McKendry, the person named in said
record, was the plaintiff in this case, and that she did commit
adultery with said Prosser.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[6]

At the close of the testimony, the court, SLAGLE, J., charged
the jury as follows :

This is an action by Mrs. McKendry against her husband to
recover possession of property which is in his possession and
which she claims the right to have.

It is not disputed that the title is in Mrs. McKendry; that
it was her property, acquired by her from her father, and to
which she has the undisputed right; and if the suit were
against any other person than her husband, there would be no

Charge of Court below.

question as to her right to your verdict. But the law relating to marriage and the rights of married women makes the questions of difficulty in this case.

Prior to the act of 1848, commonly known as the Married Woman's Act, upon marriage all the personal property of a married woman became the property of the husband, absolutely, and her real estate became his for his life. He had the right to control and manage it, to receive the rents and profits of it, and he had the right to her earnings. She had no right even to go into business and make money for her own use. That was all changed by the act of 1848, which secures to married women all property owned by them at the time of marriage, or which may be acquired after marriage except from her husband, and in some cases it may be acquired from the husband and secured to her. [I take it that the act of 1848, and if there were any question about it, the act of 1887, secures to a married woman the absolute use and control of her property, even as against her husband,]⁴ and certainly against every person else. The creditors of the husband cannot touch it. The difficulty arises in the fact that by the law a man and wife are considered one person; and, therefore, as a rule, no action can be maintained by a wife against the husband, or by a husband against the wife.

In 1856 an act of assembly was passed which authorized a married woman who had been deserted by her husband to bring suits in her own name. Prior to that, she could not bring a suit even against a stranger in her own name; it was necessary to join her husband with her, because they were regarded in law as one person. In no case was she authorized to bring a suit at common law against her husband, for the reason that she would be suing herself, in contemplation of law.

But before the act of 1856, and even before the act of 1848, a wife was not deprived entirely of the protection of the courts, and it was held that she could in equity protect her rights even against her husband. In Pennsylvania, until 1836, our courts had no equity powers, and therefore she was almost deprived of any remedy. But our courts, prior to the passage of that act conferring equity powers upon them, had adopted equitable principles, and there were certain actions that were specially called equitable actions, and among them was the ac-

tion of ejectment. There are numerous instances in which a party may bring an action of ejectment where at common law it could not be done. For instance, we have a very familiar case in that of specific performance, and even though the act conferring equity powers authorizes courts by bill to specifically enforce contracts, it is nevertheless still done by action of ejectment, because it is a substitute for a bill in equity; [and I therefore conclude that though this was a common law form of action, it might be treated as and substituted for a bill in equity, for the purpose of enforcing the rights of the plaintiff in this case; and I have so treated it in the trial thus far, and instruct you, therefore, that the plaintiff has a right to recover, provided she has made out a case in other respects entitling her to a verdict.] [2]

We then come to the question as to her rights. As I remarked before, her title is undisputed, and if there be nothing in the marriage relation which prevents her from recovering, she is entitled to your verdict against her husband, and we must then look at that relation to see how it affects this case.

Although the acts of 1848 and 1887 secure to a married woman her property, the use, enjoyment and the control of it to a large extent, she cannot sell it without the consent of her husband, he joining with her. But those acts of assembly were not intended, even as to the property rights of the husband and wife, to create an absolute divorce, and they have some joint interest in the property which is owned by the wife. Though the husband and wife each have control of their own estates, there is necessarily growing out of the marriage relation some community of interest in their property. Therefore, she has a right to say to her husband, " I have this property and we will make our home upon it; " and if they do, she would have no claim for rent unless there was a bargain made for it. She could not sue him for his occupancy of it, and as I held in a suit between these same parties, she could not sue him for trespass upon it, in a common law form of action. But if they mutually agree, and here is where I think you will find the real point of the case, to go and make their home upon the property of the wife, and do make their home upon that property, she has no right arbitrarily and without cause to remove from the property and bring suit against him to recover it, be-

cause the action being equitable she must do equity, and, therefore, the courts will not enable her to do what is unjust and wrong, and if she comes into court in that way she is not entitled to recover. Then the question for you to determine is, did these people make an arrangement to go upon that property and occupy it for their home, and did they do so? Because, until the arrangement is perfected, I do not think that the right of the husband to occupy is perfect. But if he went on that property in pursuance of the arrangement with his wife for the purpose of making a home, she assenting to it, and he took possession of the property with that purpose and under that arrangement, then she cannot, without cause, disavow or annul the arrangement and bring an action of ejectment to recover the property.

That an arrangement was made is admitted upon both sides; that in the spring of 1886 they had agreed and had prepared to go on the property, had been there and put their furniture in, cleaned the house, and were about ready to go upon the property, there is no dispute. For some reason they never did live together after they got the house ready for occupancy. They were there, as I understand, two or three days; but, if I remember the testimony properly, they were there cleaning the house and putting it in order. If I am mistaken about that you will know. For some reason, afterwards she did not go, but she rented the property or made a lease of it to Mr. Vandevort for the year 1887. There is some testimony that her personal property was all removed from the premises, and Mr. Neely, I believe, says that was done with Mr. McKendry's consent; that he said, "let her take it." There is some evidence that he took away what he had put there, a stove and some other things. He went back in the fall, got the key from Mr. Neely, to whom it had been delivered by Mrs. McKendry, and got into the property, but there was no actual occupancy of it until April or May, 1887; and when he did go into actual, permanent occupancy of it he brought with him a family, Mr. Fessler's and Mr. McCloskey, who was living with them, and put them in the place. [It is a question you will consider, whether that possession was in pursuance of this arrangement made with his wife, or whether it was inconsistent with that arrangement. If it was in pursuance of that arrangement, she

Charge of Court below.

would not be entitled to recover. But if it was inconsistent
with that arrangement, and it is for you to say whether or not
the bringing of a family into a three-roomed house is inconsist-
ent with his possession in pursuance of that arrangement, she
would be entitled to recover. He must not only have taken
possession, but he must retain it in pursuance of that agree-
ment.] ³ The facts have all been commented on at length by
counsel, and they are fresh in your minds. I do not need to
say further than this, except to direct your attention to the
point that he must have entered into and retained possession in
pursuance of and consistently with agreement.

The defendant requests the court to charge:

1. If the jury believe that Elizabeth J. McKendry, the wife
of said William McKendry, the defendant, made an arrange-
ment with her husband to go to and live upon the premises in
dispute, some time prior to April 1, 1886; that the said Eliza-
beth J. McKendry, in conjunction with her husband, moved
her furniture and household goods from the Mark's house,
where they were then living, to the premises in dispute, and
fitted up the said house for the purpose of their habitation,
and that they occupied the same for some time, in cleaning
and fitting up the same, and in superintending the making of
garden thereon, for their use and enjoyment in the occupation
of the same; and if the jury should further find that said Wil-
liam McKendry, the husband, retained possession of the said
premises for the purposes of their occupation and habitation,
but that said Elizabeth J. McKendry, his wife, by excuses and
frivolous objections, declined to go to and live upon the said
premises with her husband, and deserted him and her habita-
tion, then the plaintiff is not entitled to a verdict in her favor,
and your verdict must be for the defendant.

Answer: Affirmed, if the jury further find that Mr. Mc-
Kendry went into and retained possession in pursuance of the
arrangement referred to.

2. Under the facts in evidence, Elizabeth J. McKendry, the
plaintiff, cannot maintain this action against the defendant,
William McKendry, her husband, and your verdict should be
for the defendant.

Answer: Refused.¹

3. It having been proven, on the part of the plaintiff, that there

was an arrangement made by which William McKendry and Mrs. Elizabeth J. McKendry, his wife, were to go to live upon the farm in question, and that the defendant did go to live upon said farm, and is now living upon said farm, the burden of proof is upon the plaintiff to show that the arrangement was changed, either by the mutual consent of the parties, or that she, Elizabeth J. McKendry, had such reasonable cause for leaving her husband, as would entitle her to a divorce, such as (1) "when the husband has, by cruel and barbarous treatment, endangered his wife's life;" or, (2) "offered such indignities to her person as to render her condition intolerable and life burdensome."

Answer: Affirmed, if the jury find that McKendry went on the farm and is now living on it in pursuance of the arrangement referred to.

The jury returned a verdict in favor of the plaintiff. A rule for a new trial having been discharged, the defendant took this appeal, assigning for error:

1. The refusal of the defendant's point.[1]

2–4. The parts of the charge embraced in [ ] [2 to 4]

5, 6. The refusal of the defendant's offers.[5] [6]

*Mr. James Fitzsimmons* (with him *Mr. J. S. Robb*), for the appellant:

As this action was brought on April 28, 1887, and was pending prior to the passage of the Married Person's Property Act of June 3, 1887, P. L. 332, the question which will arise should be adjudicated upon the principles well considered and decided in the construction of the act of April 11, 1848, P. L. 536, and April 11, 1856, P. L. 315: Johnston v. Johnston, 31 Pa. 450.

1. The evidence shows that the plaintiff and the defendant went upon the property in dispute to live upon it as their home, in May, 1886; that when they had put it in order, the plaintiff returned to her mother to nurse her, and that the defendant retained control of the property and boarded; that when the plaintiff's mother recovered, the defendant requested her to rejoin him at their home, but without reasonable excuse she refused, and her desertion of him then became clearly ap-

parent. There was not a scintilla of evidence in the case indicating that he had deserted her, or that he had failed to support her. How is it possible for the plaintiff to prevail in this action under these circumstances? Neither the act of 1848, nor that of 1856, is intended to authorize an action at law between husband and wife for the security of her rights of private property: Ritter v. Ritter, 31 Pa. 396; Pettit v. Fretz, 33 Pa. 118; Hoar v. Axe, 22 Pa. 384: Manderbach v. Mock, 29 Pa. 43; Miller v. Miller, 44 Pa. 170; May v. May, 62 Pa. 206; Husbands, Married Women, 35.

2. There is no proof anywhere indicating that the plaintiff had made out such a case as would entitle her to a divorce from her husband. Only such cause as would entitle to a divorce will justify a wife or husband in abandoning each other: Butler v. Butler, 1 Pars. 337; Gordon v. Gordon, 48 Pa. 238. The cruel treatment must endanger life: Richards v. Richards, 37 Pa. 225; a single act of violence is not sufficient: Richards v. Richards, 1 Gr. 389; Eshbach v. Eshbach, 23 Pa. 343. A husband may deny a wife intercourse with her family, without giving ground for divorce: Naring v. Naring, 2 Phill. 132; Grove's App., 37 Pa. 443; Miles v. Miles, 76 Pa. 357; Jones v. Jones, 66 Pa. 494; May v. May, 62 Pa. 206; Bealor v. Hahn 117 Pa. 172. It may be urged, however, that the defendant had no right to make his home on the plaintiff's lands; that while she is not bound to furnish a home for herself, her husband and family, it is the duty of a husband to furnish a home for his wife. This may be true; but if the wife is willing to subject her property to that servitude, surely it is a matter of arrangement between the two with which no court can interfere: Cole v. Van Riper, 44 Ill. 58.

3. The court below erroneously rejected evidence tending to show that the plaintiff had committed adultery with one Jerome Prosser. The offer was made, not upon the ground that adultery or fornication in itself would be a defence in the ejectment, but for the purpose of showing, in connection with other evidence, a desertion by her of her husband. Of course, she could herself have been indicted and convicted criminally for this offence, but when a woman leaves the home and embraces of her husband for four months, refusing to return to him, and lives with another man as though married to him, could there be any

doubt as to the competency of that testimony as tending to show a wilful and malicious desertion? The husband still clings to the hope that for the future welfare of his offspring, his possession of this property may cause a return of this unworthy woman. If there were nothing else in this case, this should go very far to induce a reversal of this judgment.

*Mr. A. M. Blakeley* (with him *Mr. A. Blakeley*), for the appellee :

The plaintiff brought her ejectment in the name of her mother as her next friend. It was brought against John Fessler and William McKendry, the persons then in possession of her land. We urge that the action can be maintained as a substitute for a chancery proceeding to protect the plaintiff's estate from the inequitable and unjust interference of her husband, and to wrest the possession of that estate from his grasp, a possession obtained by a trick and a fraud, and maintained by force against the plaintiff and her agents. Further; under the facts in evidence, the action can be maintained under § 3, act of April 11, 1856, P. L. 315 : " Whensoever, any husband shall have deserted or separated himself from his wife, or neglected or refused to support her, or she shall have been divorced from his bed and board, it shall be lawful for her to protect her reputation by an action for slander or libel; and she shall have the right, by action, to recover her separate earnings or property. Provided, That if her husband be the defendant, the action shall be in the name of a next friend." The statements of the law by the court below, covered by the second, third and fourth assignments of error, seem to us to be self-evident propositions which need no discussion; and the Beaver county record offered in evidence was inadmissible against the plaintiff, as she was not a party thereto.

OPINION, MR. CHIEF JUSTICE PAXSON :

The first specification of error presents the question whether the plaintiff can maintain this action against the defendants, one of whom is her husband. It was an action of ejectment brought in the court below to recover the possession of certain real estate, admittedly the separate property of the wife. It is clear she could not sustain such suit at common

law. Can she do so by force of any act of assembly? We throw out of the case the act approved June 3, 1887, P. L. 332, relating to husband and wife, for the reason that this suit was commenced before its passage. The rights of the parties must be measured by the law as it stood on the day when the writ issued.

Without going into tedious detail in regard to the legislation affecting the property rights of married women, the sixth section of the act of April 11, 1848, P. L. 536, secures to them the full use and enjoyment of their property of every description, whether real, personal, or mixed, as fully after marriage as before. It is not liable for her husband's debts, nor can he mortgage or encumber it. There are various other provisions in subsequent acts of assembly relating to the separate earnings of the wife, her right to be declared a feme sole trader, etc., which it is not necessary to refer to in detail. Then comes the act of April 11, 1856, P. L. 315, the third section of which provides that, "Whensoever any husband shall have deserted or separated himself from his wife, or neglected or refused to support her, or she shall have been divorced from his bed and board, it shall be lawful for her to protect her reputation by an action for slander or libel; and she shall also have the right, by action, to recover her separate earnings or property: provided that, if her husband be the defendant, the action shall be in the name of a next friend." The plaintiff contends that her suit can be sustained under this last act.

The act of 1848, which secures to a married woman the use and enjoyment of her separate estate, contains no provision by which her rights thereto can be enforced against her husband. It may very well be that a common law action could not be maintained against him for that purpose. The act having given the right, there must be a remedy to enforce it; otherwise it would fail of its purpose, in part, at least. If a husband were to deprive his wife of the use and enjoyment of her separate estate, it would be an act contrary to law, and prejudicial to her interests, and we have no doubt a court of equity could interfere to restrain such action. Many nice questions may arise as to what would constitute an interference by the husband with the separate property of the wife. If they are living together on her property, her right to eject him

therefrom arbitrarily may well be questioned. The home of the husband is the home of the wife, and the home of the wife must necessarily be the home of the husband, if he chooses to avail himself of it; otherwise all unity of person between them would be destroyed, which we do not think was intended by the act of 1848. But if the husband desert his wife, we do not think he can take possession of her real estate and hold it as against herself or her tenants. Upon the trial of the cause below, the learned judge submitted to the jury the question whether this husband and wife took possession of the property in dispute under an agreement or arrangement between them that they were to make it their home, and instructed them that, if the possession was taken in pursuance of such an arrangement, the plaintiff could not recover. This clearly appears from that portion of the charge embraced in the third specification. "It is a question," said the learned judge, "you will consider, whether that possession was in pursuance of this arrangement made with his wife, or whether it was inconsistent with that arrangement. If it was in pursuance of that arrangement, she would not be entitled to recover; but if it was inconsistent with that arrangement, and it is for you to say whether or not the bringing of a family into a three-roomed house is inconsistent with his possession in pursuance of that arrangement, she would be entitled to recover. He must not only have taken possession, but he must retain it in pursuance of that agreement." We fail to discover error in this instruction. The whole matter of the unhappy difficulties between these parties, and the facts which led up to the occupation of the premises, were before the jury, and they have found that the possession of the husband was inconsistent with the alleged agreement. With this fact found against them, the only point left the defendants is the question whether the action of ejectment can be maintained.

As before intimated, we think a bill in equity would lie against the husband, at the suit of the wife, to protect her in the enjoyment of her separate estate, independently of the act of 1856. As before observed, it is an act contrary to law, and prejudicial to the interests of the wife, for a husband to deprive her of the possession and enjoyment of her separate estate, and, as there is no remedy at law provided for such

case, we have no doubt that the jurisdiction of equity would attach under the act of 1836, conferring equity powers upon the courts. The action of ejectment is often a substitute for a bill in equity, and we have in our practice what is known as an equitable ejectment. It is used constantly to enforce specific performance of contracts for the sale of real estate, and in some other instances. It is a convenient and plastic remedy, and more speedy than a bill in equity. The learned judge below treated this suit throughout as an equitable ejectment, and, while it is not so technically, we see no objection to regarding it as substantially such a proceeding. If it were necessary to frame a new writ to meet the exigencies of this case, we have ample power to do so, under the third section of the act of June 16, 1836, P. L. 785. It is not needed that we should frame a new writ, where we have one already in existence which will accomplish all that is needed. Regarding this action as a substitute for a bill in equity, we are of opinion that it can be sustained.

There is no merit in the fifth and sixth specifications. The record referred to was properly excluded. The plaintiff was not a party to that proceeding, and it cannot be given in evidence to affect her.

Judgment affirmed.