## Harris v. Harris.

*John R. K. Scott*, for plaintiff; *Raymond Pace Alexander*, for defendant.

GORDON, JR., J.—This is an action of ejectment brought by a husband against a wife, and the case is before us upon a rule for judgment under the pleadings. The plaintiff, in his declaration and abstract, shows title to the property to be in himself, and declares that the defendant "unlawfully and wrongfully holds, uses and occupies" the premises, and "unlawfully and wrongfully prevents and for a long· time has prevented the plaintiff from using, occupying or enjoying the same or any part thereof."

As this is a rule for judgment under the pleadings, we must take the averments of the defendant's answer to be true, and determine whether, assuming the truth of the answer, the plaintiff is entitled to judgment, notwithstanding its averments. In considering the answer, we may observe that it is somewhat indefinite and brief in certain of its allegations. It is evident that the defendant's case might have been better pleaded, but we are not disposed, on a rule for judgment, to ignore facts which are undoubtedly available as a defense, and which, indeed, were admitted at the oral argument, especially since the substance of a full defense is contained in the answer, although it may be inadequately pleaded according to the strict rules of pleading. Reading the answer thus, we find that it sets up the following facts in defense to the suit: The defendant wife admits that the legal title to the property is in the plaintiff. She denies, however, that she is unlawfully withholding the premises from the plaintiff, or that she is unlawfully and wrongfully preventing him from using, occupying or enjoying the same or any part thereof. In addition, she avers the true facts respecting the property to be that she married the plaintiff on July 3, 1920, at which time he was the owner of the property; that after the marriage her husband lived with her in said property, which he established as their common home and domicile, and in which he installed her, as his wife, until on or about February 3, 1926, a period of almost six years, at which latter date he assaulted and beat her, and thereafter willfully and maliciously deserted her, and withdrew voluntarily from the premises in question, and that he has not lived in said premises since that date.

The position taken by the plaintiff, on the oral argument, was, first, that the Act of June 8, 1893, P. L. 344, as amended by the Act of March 27, 1913, P. L. 14, enables the husband to bring this suit against his wife, the property

34

in question being his separate property; and, second, that the wife has no interest in it except her inchoate right of dower, and he is, therefore, entitled to a writ of ejectment because title is in him. We agree that a husband is enabled, by the Act of 1893, as amended, to sue his wife to protect or recover his separate property. Since the passage of those acts, the right of a husband to maintain ejectment against his wife has been specifically affirmed in Wagner v. Wagner, 60 Pa. Superior Ct. 526, in which the Superior Court dismissed a bill in equity, brought by a husband against a wife to eject her from a property owned by him, upon the ground that the husband's remedy, if any, was at law. See, also, Schomaker v. Schomaker, 247 Pa. 444.

We cannot agree, however, with the second contention of the plaintiff. While ejectment ordinarily tries title, it is essentially and ultimately a possessory action. *Prima facie*, the right to possession follows the legal title, but situations frequently arise—as, for instance, in the case of landlord and tenant—in which the legal title is in one and the right to possession in another. Hence, the ultimate question in all such actions is whether the right of possession is in the plaintiff or in the defendant. Presumptively, it is in him who shows himself to be the holder of the title, but this presumption is overcome by evidence of facts and circumstances which disclose the lawful right of possession to be in another, as against the legal owner. The controlling question in the case before us, therefore, is whether this husband, who, in discharge of his legal obligation to provide a home for, and to maintain, his wife, has established their common domicile in one of his properties, and installed her in it, can, in disregard of his legal duty, desert and abandon her, leaving her in lawful possession, use and occupancy of it, and thereafter invoke the aid of the courts, in his effort to complete his unlawful desertion of her, to put her out upon the street. The very statement of the proposition answers it. The wife has denied that she has seized her husband's property and excluded him from it. Assuming the substance of her answer to be true, this denial is justified, for she did not unlawfully seize his property if he installed her in it and made it their common home. Her possession of it was acquired lawfully, and it continued lawful, even after he maliciously withdrew from the common domicile and deserted her, for no act of hers has altered the lawful character of her possession. In addition, a deserting husband will not be heard to claim that he is excluded by his wife from his home—a property which he has established as the common family domicile and from the full use and enjoyment of which he is deprived only by his own unlawful act.

The situation disclosed by these proceedings is so rare that few authorities dealing with it are to be found. The only two cited by counsel for the plaintiff are Schomaker v. Schomaker, *supra*, and Wagner v. Wagner, *supra*. The latter of these is not in point upon the main question before us. It was a bill in equity brought by a husband against his wife to restrain her from interfering with his use and occupancy of certain land which he owned in fee. The bill was dismissed upon the ground that the plaintiff had not come into equity with clean hands, the court adding in its opinion: "If the defendant [the wife] is not lawfully in possession of the premises, the complainant [the hus-latter of these is not in point upon the main question before us. It was a bill in equity filed by a husband against his wife to secure the possession of certain household goods which he alleged belonged to him, the jurisdiction of equity over the controversy was challenged. The court held that equity had jurisdiction, and in its opinion, referring to certain parts of the answer dealing with the conduct of the plaintiff toward his wife, which "probably were introduced upon the theory that the Act of 1893 would not permit him to sue

her, even in equity, to recover his separate property, unless he could show a desertion on her part," the court said that "since the defendant claimed the property in controversy under an alleged absolute gift to her, and not under a contract upon a valuable consideration involving things to be done by the parties thereto, the allegations concerning the conduct and alleged defaults of the husband, and the prayers of the cross-bill based thereon, were not germane to the subject matter of the original bill. We have already stated that the evidence was sufficient to sustain the chancellor's finding that the goods sought to be recovered belonged to the husband, and not the wife; in fact, at the trial, the defendant admitted that the plaintiff had paid for the property, and her testimony, even if accepted as true, was simply to the effect that her husband said that he would give her the furniture, not that he had given it to her." From this it will be seen that the authorities relied upon by the plaintiff to support this rule for judgment are not in point.

The only case in Pennsylvania which, in our judgment, substantially rules the case before us is McKendry v. McKendry, 131 Pa. 24, cited by counsel for the defendant. In it a wife brought ejectment against her husband, from whom she was separated and who was living in a property owned by her. The husband introduced evidence to show that after their marriage the parties agreed to occupy the premises in suit as their home, but that, as a consequence of some dispute between them, the wife refused to live in the premises with her husband, and started her action after the husband had gone into occupancy under their agreement. In discussing the law of the case, the Supreme Court said: "Many nice questions may arise as to what would constitute an interference with the separate property of the wife. If they are living together on her property, her right to eject him therefrom arbitrarily may well be questioned. The home of the husband is the home of the wife, and the home of the wife must necessarily be the home of the husband, if he chooses to avail himself of it; otherwise all unity of person between them would be destroyed, which we do not think was intended by the Act of 1848. . . . Upon the trial of the cause below, the learned judge submitted to the jury the question whether this husband and wife took possession of the property in dispute under an arrangement or agreement between them that they were to make it their home, and instructed them that, if the possession was taken in pursuance of such an arrangement the plaintiff could not recover. . . . We fail to discover any error in this instruction."

Here the wife, who was under no legal obligation to support or provide a home for her husband, was the plaintiff; and our Supreme Court held that, since the parties had entered into an agreement to make the wife's property their common domicile, she could not lawfully violate such an agreement, and that it was a good defense to the action. When the situation is reversed, as it is in the case before us, and a husband charged with the legal duty to provide and maintain a home and common domicile for himself and his wife is the plaintiff, the conclusion is only the clearer that he cannot eject her from the joint home. It is true that the McKendry case was decided before the Act of 1913. That act, however, did not alter the law governing the legal rights and duties of a husband and wife toward each other and in their respective properties. It merely enabled them to maintain actions against each other to enforce whatever rights they might have, leaving their substantive rights as they then stood or might thereafter be established by law.

Viewing the law as we have indicated, it is unnecessary to discuss other questions that might arise in the case. They will be disposed of by the trial court. It may be well, however, to point out that one of the great advantages

which has resulted from the administration of equity by our common-law courts is that it has resulted in the application to litigation of equitable principles under common-law forms. This has been productive of a more accurate justice. It has eased the hardships and unjust consequences that result from a rigid enforcement of common-law rules—which have been said to be deficient at times because of their universality. Looking through the facts pleaded in this case, it is evident that this husband, who, so far as he can, has deserted and abandoned his wife, is now seeking to consummate that desertion with the aid of the processes of the law. Upon such a plaintiff equity would look with abhorrence, and to him it would deny the slightest help in accomplishing his unlawful purpose. It seems to us that it would be shocking thus to pervert the forms of law. We cannot close our eyes to the bad faith of the suit as disclosed by the pleadings, or solemnly and in the name of justice become a party to so gross a breach of a legal and moral duty, by issuing our writ to turn her out of her home and thus leave her with only a lawsuit for her maintenance.

The rule for judgment under the pleadings is, accordingly, discharged.