Moser v. Granquist, Appellant.

Argued April 19, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*L. B. Maxwell,* for appellant.

*Stanley C. Matthews,* with him *A. Emerson Howell,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 23, 1949:

The question presented is whether a wife (divorced in an ex parte foreign divorce proceeding) has established title to real estate by adverse possession against her husband and his grantee.

The action is in ejectment. By agreement it was heard by the court without a jury. The facts, about which there is no dispute, may be summarized as follows: John Granquist, plaintiff's predecessor in title, and Rose Granquist, the defendant, were married in 1908. The husband purchased the dwelling in question,

located in White Mills, Wayne County. Title was taken *in the husband's name* on June 8, 1922. Immediately thereafter the husband took his wife and children upon the premises which they jointly occupied as a home until October 1922. On that date the husband, leaving his wife and children in the premises, went to Ohio in search of employment. The husband never returned to his habitation. On October 29, 1934 he secured an ex parte decree in divorce from his wife. The wife has continued to reside in the premises. On November 7, 1947, the husband sold and conveyed the premises to the plaintiff. No allegation is made that the conveyance was made collusively by the husband to the plaintiff in fraud of defendant's marital rights. In the action of ejectment defendant claims that she acquired a valid title to the real estate by adverse possession against her husband. The court entered a verdict for the plaintiff. This appeal followed.

To acquire title to land in Pennsylvania by adverse possession the possession must be "actual, continued, visible, notorious, distinct and hostile" and be persisted in for 21 years or more: *Hawk v. Senseman*, 6 S. & R. 21; Act of March 26, 1785, 2 Sm. L. 299, section 2, 12 PS, 72 et seq.; *Miles v. The Pennsylvania Coal Company*, 245 Pa. 94, 91 A. 211; *Kossell v. Rhoades*, 272 Pa. 75, 116 A. 56; *Parks et al. v. Pennsylvania R. R. Co.*, 301 Pa. 475, 152 A. 682; *Philadelphia Electric Co. v. Philadelphia*, 303 Pa. 422, 154 A. 492.

When defendant, with her husband, went upon the property, the possession was not hostile to *him*. At that time, and *while she remained his wife*, the defendant wife possessed a contingent claim, right or expectancy in her husband's real estate which could ripen into an estate *in case the husband died first*: *Briegel v. Briegel et al.*, 307 Pa. 93. Cf. *Hunt et vir. v. Mestrezat*, 361 Pa. 415, 418, 65 A. 2d 389. Where the possession, at its inception, *is permissive* the statute will not begin to run

against the real owner *until there has been some subsequent act of disseizin or open disavowal of the true owner's title,* and from that time one claiming title by adverse possession must thereafter be in continuous, open, notorious, exclusive and hostile possession for the statutory period: *Citizens Electric Company v. Susquehanna Boom Company,* 227 Pa. 448, 76 A. 203; *Campbell v. Duggan-Rider Co. et al.,* 284 Pa. 19, 25, 130 A. 296; *Philadelphia Electric Co. v. Philadelphia,* 303 Pa. 422, 429, 154 A. 492; *Medusa Portland Cement Company v. Lamantina,* 353 Pa. 53, 57, 58, 44 A. 2d 244; *Hanley v. Stewart et al.,* 155 Pa. Superior Ct. 535, 39 A. 2d 323. The burden is upon the person claiming by adverse possession to establish when his adverse holding began: *Johns v. Johns,* 244 Pa. 48, 52, 90 A. 535.

Defendant contends that she has occupied the premises adversely to her husband since he moved from the home in October, 1922. We have reviewed the testimony and are unable to discover when, if ever, the character of defendant's possession became hostile to her husband's title. Nothing can profitably be added to what the learned judge below said in his opinion:

"An examination of the testimony discloses that the defendant wrote her husband, plaintiff's predecessor in title, requesting that he put water in the house. The defendant again testified that she wrote John Granquist 'a year after he went' about the bad condition of the roof on the house, and that her son wrote plaintiff's predecessor in title 'more than ten years ago' about the same matter. And a further examination of the testimony reveals, by the defendant's own admission, that 'a small roof was put on the kitchen' by John Granquist, plaintiff's predecessor in title, possibly 'between 1930 and 1935'. Throughout the testimony the defendant and her witnesses have admitted that no improvements or major repairs had been made to the premises by the defendant, though by the same testimony it was admit-

ted that the premises required such major essential repairs."

Defendant further contends that since her husband installed her in the premises as their joint home and subsequently deserted her, neither the husband nor a purchaser from him is entitled to eject her, because of her marital right of support. A *husband*, who has deserted his wife, may not maintain ejectment against her to recover possession of his premises which he established as a common home at the time of the marriage. Defendant relies upon *Harris v. Harris*, 16 D. & C. 33. But in the present case the action in ejectment was not brought by the *husband*. It was instituted by a *purchaser for value* from the husband. There was no allegation or testimony that the purchaser was not a purchaser for value from the husband or was acting in collusion with the husband to defraud the defendant in her marital rights: *Bouslough v. Bouslough*, 68 Pa. 495, 499; *Armstrong v. Connelly*, 299 Pa. 51, 149 A. 87; *Kirk v. Kirk et al.*, 340 Pa. 203, 16 A. 2d 47; *Cancilla v. Bondy et al.*, 353 Pa. 249, 252, 44 A. 2d 586.

The learned trial judge correctly refused to pass upon the validity of the Ohio divorce. He said: "If the divorce should be void and of no legal effect, at most it would give to Rosie Granquist a future right in the property if and when John Granquist should predecease her. At that time her interest in the property, as widow, would come into existence under the intestate laws. This fact does not entitle her to the present right of possession so we will not pass on the question in these proceedings."

The defendant has been unable either to establish a title by adverse possession or the right to continue to occupy the premises.

The judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE JONES:

I agree that the defendant failed to make out a case of title by adverse possession. But, I do not agree that the plaintiff can maintain his possessory action of ejectment against Mrs. Granquist,—certainly not, if she is still the lawful wife in Pennsylvania of the plaintiff's predecessor in title and, perhaps not, even though the Ohio divorce was effective to dissolve the matrimonial bonds. The property in controversy in which she is residing is the common marital domicile wherein her husband installed her and their children in June 1922 and where she and the children continued to live with him until he voluntarily left this State in October of that year and where she has continued to live with the children ever since without annoyance until the institution of the present litigation.

The majority opinion states that "The learned trial judge correctly refused to pass upon the validity of the Ohio divorce." With that statement, I wholly disagree. Not to pass upon the efficacy in Pennsylvania of the husband's Ohio divorce is an unwarranted disregard of this important phase of the defense. Suppose, arguendo, that the husband had not obtained a divorce in Ohio but that the circumstances, otherwise, were the same as they are, certain it is that he could not have enlisted the aid of a Pennsylvania court to evict his wife from the marital domicile. For an interesting and well-considered exposition of the law applicable to such a situation, see opinion by Judge GORDON of Common Pleas No. 2 of Philadelphia County in *Harris v. Harris*, 16 D. & C. 33, 34 (1932); cf. also *McKendry v. McKendry*, 131 Pa. 24, 35, 18 A. 1078. What the parties accomplished *by agreement* in the *McKendry* case with respect to the husband's continued right of domicile in the wife's property is what the law imposes in favor of a wife with respect to her husband's property because of his common-law duty to provide her a place in which to live.

On the other hand, take the facts of this case exactly as they are except for supposing that the Ohio divorce happens not to be effective in Pennsylvania, would not the defendant be entitled to a wife's rights in the Pennsylvania property of her husband, the plaintiff's predecessor in title? See *Rice v. Rice,* 336 U. S. 674. Under *Haddock v. Haddock,* 201 U. S. 562, a decree in divorce was not entitled to full faith and credit where the domicile of the libelant was not the matrimonial domicile and the service on the respondent was constructive. True enough, *Haddock v. Haddock* was overruled by *Williams v. North Carolina,* 317 U. S. 287, 299, which made *actual* domicile of the libelant the test of the divorce court's jurisdiction and the validity of the jurisdiction the criterion of the full faith and credit to which the decree is entitled even in the matrimonial domicile. Thus, under the *Williams* case, supra, each spouse may establish a separate domicile regardless of which one may be at fault. But, the actuality of the libelant's domicile, when foreign to the matrimonial domicile, is *still* a matter for inquiry and determination by a court of the matrimonial domicile at the instance of the respondent: see *Rice v. Rice,* supra; *Williams v. North Carolina,* 325 U. S. 226, 230-231 (the second *Williams* case) ; and *Commonwealth v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, aff'd sub. nom. *Esenwein v. Commonwealth,* 325 U. S. 279, where Mr. Justice LINN, speaking for this Court, said (p. 457),— "There is no doubt of the power of the courts below to inquire into the jurisdictional facts necessary to confer jurisdiction on the [foreign] court: [citing cases]."

In addition to the question in the instant case as to the actuality of the libelant's domicile in Ohio, there is a further question as to whether the constructive service directed to be made on the respondent met the legal requirements of the due process essential to the court's jurisdiction: see the first *Williams* case, supra,

where it was said (p. 299) that "There is no constitutional barrier *if the form and nature of the substituted service [citing case] meet the requirements of due process*" (Emphasis supplied). In the present instance, the constructive service consisted of a notice of the divorce suit in Ohio, posted in ordinary mail, to "Lucy Granquist, White Mills, Pa." The respondent's correct Christian name (and known to the libelant so to be) is Rose and not Lucy. There can be no legal presumption that an incorrectly addressed letter was received by the addressee; and, to date, there has been no proof in this case that Rose Granquist ever received the notice. The questions as to the jurisdiction of the Ohio court and the due process of the service are both present and important.

But, even if the Ohio divorce severed the matrimonial ties, it did not *ipso facto* settle the property rights of the respondent in the husband's property situate in Pennsylvania. See *Estin v. Estin*, 334 U. S. 541, 549. Mrs. Granquist's interest in the property, here involved, is not merely an inchoate right of dower. She has a very present right to the continued possession of the common marital domicile regardless of the question of the validity of the Ohio divorce in Pennsylvania. The common law right of an innocent spouse to retain possession of the marital domicile which the other spouse voluntarily abandoned should not be confused with the legal term, "matrimonial domicile", and the important part it formerly played where service in divorce by a foreign court was had only constructively.

The majority opinion twice makes point of the fact that there is no allegation that the husband's sale of the property to the plaintiff was collusive. Such an allegation, or even proof thereof, would be superfluous to the present issue. Granted that the plaintiff acted with highest good faith, still, to his bounden knowledge, Mrs. Granquist was in actual possession of the property when

he purchased it and, of course, in that situation he took it subject to her rights whereof it was his duty to inquire.

In my opinion, it is of utmost importance that the question of the validity of the Ohio divorce be determined in this proceeding. That would necessarily require the development of additional facts and, thereafter, further findings by the trial court, for which purposes, I would reverse and remand.