## Milner v. Milner

*Isadore Bellis*, for plaintiff.
*Harry Shapiro*, for defendant.

KELLEY, J., February 11, 1960. — Plaintiff, Josef Milner, sought in this suit to eject his wife, Lillian, from a house which he owns in his own right. He instituted his suit under the Act of June 8, 1893, P. L. 344, as amended March 27, 1913, P. L. 14, 48 PS §111, which allows a husband to sue his wife in a proceeding to recover his separate property. Trial was had before the court without a jury, and the evidence adduced presented the following factual situation.

The parties were married in 1925. In 1927 they took up residence at 5212 Gainor Road, Philadelphia, the premises which are the subject matter of the instant suit. Their marital relationship seemed to be under continuous strain, characterized by defendant as bearing upon financial issues, the upbringing of their two children and her position in the household. They separated for a short period in 1947, during which defendant continued to live at the home on Gainor Road, but they resumed living together shortly thereafter. The stress attending the marriage continued, and defendant complained that plaintiff refused to build a new house upon real estate they had purchased, to accompany her to motion picture shows and to agree to attend a dinner to which she wished to invite certain friends. When asked the cause of her marital difficulties, defendant answered that all that she knew was that she was terribly unhappy and that she did not seem to be able to make plaintiff understand things.

The parties separated again in 1953 but, before then, they had ceased sharing the same bedroom and defendant had told plaintiff that she wanted him to leave the house, that she didn't want him there and that she didn't want any part of him. She herself testified that she told plaintiff:

"Joe, I think it is very foolish for us to go on together, we are just hurting one another. I don't know who is to blame. I don't know who is right, but I feel

the best way out for us is to make a life of our own and get a divorce."

Soon thereafter, plaintiff removed himself from the premises and took up permanent residence elsewhere. For some time thereafter he voluntarily supported defendant, but in 1956 he became subject to an order of the municipal court which required him to pay $200 weekly for defendant's support. The order is still in effect.

The trial court noted that the issue presented in this action was best described by Harris v. Harris, 16 D. & C. 33 (1932), which held that a deserting husband could not maintain the action of ejectment against his wife. See also Moser v. Granquist, 362 Pa. 302 (1949); McKendry v. McKendry, 131 Pa. 24 (1890); Wagner v. Wagner, 60 Pa. Superior Ct. 526 (1915). At the trial defendant contended that plaintiff's departure from the common marital domicile must be construed as desertion within the purview of the Harris case because it was not justified, not having been effected by force or reasonable apprehension thereof, citing Zorn v. Zorn, 382 Pa. 319 (1955), and Barnes v. Barnes, 21 D. & C. 101 (1934).

However, the cases cited deal with situations where one spouse seeks a divorce from the other on the ground of "constructive" desertion; that is, where the deserted party has been put out of the marital domicile by force or, once out, reëntry is prevented by force. They hold that, in order to secure a divorce on this ground, the party claiming desertion must show that his or her absence was forced and did not result from mere inclination or agreement, or inability to put up with the improper conduct of the spouse. Relying on those cases, defendant contends that plaintiff must have deserted her because he could not properly claim that she constructively deserted him. We cannot agree with this conclusion.

The word "desertion" has a specific legal meaning. It is the actual abandonment of marital cohabitation, with an intent to desert, willfully and maliciously persisted in without cause. The intent necessary is manifested when, without cause or consent, either party withdraws from the residence of the other: Ingersoll v. Ingersoll, 49 Pa. 249 (1865). This leading case removed a consensual separation from the sphere of "desertion". Mere separation is not desertion, and it is only separation when the court finds the consent or even encouragement of the wife to the absence of the husband. The guilty intent necessary, before desertion can be made out, is rebutted where the separation is encouraged by the one remaining at home, or is a result of mutual consent. Totino v. Totino, 176 Pa. Superior Ct. 108 (1954); Reiter v. Reiter, 159 Pa. Superior Ct. 344 (1946).

Defendant, by her own evidence, could not successfully maintain an action for divorce on the theory that plaintiff had deserted her. For the same reason, she could not show desertion for the purpose of defending the ejectment action.

Defendant contended before the trial court that the support order she received in the municipal court evidenced plaintiff's desertion. The record of that proceeding is neither conclusive (Mehaffey's Estate, 102 Pa. Superior Ct. 228 (1931); Hahn v. Bealor, 132 Pa. 242 (1890)), nor controlling: Carr v. Carr, 160 Pa. Superior Ct. 124 (1947). In this Commonwealth a wife may secure support if her husband has deserted her or has failed to maintain her, and a support order does not always indicate a judgment of desertion because it may be imposed for mere failure to provide, unaccompanied by desertion: Testa v. Testa, 76 D. & C. 355 (1951).

The late Judge Millen, in granting the support order in the municipal court, relied upon the theory that a

husband who leaves the marital domicile at the request of the wife, but without compulsion, is not relieved of his duty to support her unless he can establish conduct on her part which would be a valid ground for a decree in divorce: Commonwealth ex rel. Myerson v. Myerson, 160 Pa. Superior Ct. 432 (1947) ; Commonwealth ex rel. Testa v. Testa, 164 Pa. Superior Ct. 413 (1949) ; Commonwealth ex rel. Rovner v. Rovner, 177 Pa. Superior Ct. 122 (1955). His decision, and the cases upon which he relied, turned only upon the point that, in the instant situation, the husband could not defend against the wife's suit for support because he could not show a ground for divorce in himself based upon the wife's alleged constructive desertion or based upon indignities allegedly committed by the wife. Nowhere in his opinion does the word "desertion" appear, and the only logical inference that may be drawn from a reading of the record and the opinion is that plaintiff owed a duty to support defendant, which conclusion is not debated before this court. Since the duty to support may be enforced for reasons other than desertion, the naked decree does not preclude us from finding that plaintiff did not desert defendant, while at the same time agreeing that plaintiff did owe a duty to support defendant and that the support decree had been properly entered.

Finally, defendant relied upon the language of the Harris case, supra, at page 36, to sustain her position:

"We cannot close our eyes to the bad faith of the suit as disclosed by the pleadings, or solemnly and in the name of justice become a party to so gross a breach of a legal and moral duty, by issuing our writ to turn her out of her home and thus leave her with only a lawsuit for her maintenance."

This very language resulted in the rule that a "deserting" husband cannot maintain the action of ejectment against his deserted spouse. However, plaintiff, in surmounting the obstacle of desertion, over-

came the impediment presented by the language quoted above. The trial court noted that plaintiff was supporting his wife and that she was not left "with only a lawsuit for her maintenance." She had, in fact, already successfully prosecuted that suit in the municipal court.

The trial court adjudicated, therefore, that plaintiff was entitled to possession of the premises. Defendant excepted to the adjudication and the matter was argued before the court en banc.

Defendant now raises the contention that a husband has a common law duty to provide his wife with a home and that this duty is separate and distinct from his statutory obligation to pay money for her support and maintenance.

In support of this contention she cites 26 Am. Jur. §338, p. 936:

"The husband's obligation of support requires him to provide his wife with a place of abode . . .", the dissenting opinion in Moser v. Granquist, supra:

"The common law right of an innocent spouse [is] to retain possession of the marital domicile which the other spouse voluntarily abandoned . . .", at page 309, and McKaig v. McKaig, 154 Misc. 257, 276 N. Y. S. 829 (N. Y. 1935):

"From the very beginnings of the common law, the husband has been required to support and maintain his wife. This duty is based not on contract or statute but on status. . . . A part of this duty is to provide a suitable home for her."

We have no argument with these authorities, but we point out that our legislature has enacted The Penal Code of June 24, 1939, P. L. 872, sec. 733, as amended, 18 PS §4733, which reads, in part:

"If any husband, or father being within the limits of this Commonwealth, separates himself from his wife or from his children, or from wife and children, with-

out reasonable cause, or neglects to maintain his wife or children. . . .

"[He may be ordered] being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said wife or children, or both. . . ."

While the common law rights of the wife arising from the marital status remain unimpaired, this statute provides the complete method by which they are effected:

"The legislature intended Section 733 [The Penal Code of 1939, 18 PS §4733], and prior statutes from which it was derived, to provide the method by which a wife who has been wrongfully deserted by the husband or who has been deprived of support by the neglect of the husband, could seek judicial assistance in securing a reasonable allowance for the support of herself and family": Commonwealth v. George, 358 Pa. 118 (1948), at p. 123. See also Commonwealth v. Berfield, 160 Pa. Superior Ct. 438, 441 (1947).

In accord with this view is defendant's own citation of 26 Am. Jur. §338, p. 936. The completed quotation reads:

"The husband's obligation of support requires him to provide his wife with a place of abode that will be deemed a suitable home when considered in the light of modern standards of civilization which pertain to the health, comfort, welfare, and normal living of persons": page 936.

The case which is cited in support of this quotation, State v. Waller, 90 Kan. 829, 136 Pac. 215 (1913), concerns a defendant husband who was convicted for not supporting his wife and child. In discussing a statute almost identical to our own, the court stated that the husband is obligated to his wife to provide a place of abode, furniture, food, apparel and medical care, that this obligation was rooted in the common conscience of

people and that: "In view of this fact the Legislature undertook to provide a *method and a sanction* adequate to secure performance": At page 217.

The Penal Code of 1939 and its present counterpart, the Act of September 26, 1951, P. L. 1494, as amended, 18 PS §4733, are not then violative of The Penal Code of June 24, 1939, P. L. 872, sec. 1102, 18 PS §5102, which keeps existent any civil rights or remedies which were part of the common law. They merely provide the means by which the wife may secure those rights that were already hers under the common law.

With this in mind, we find that the common law right of a wife to a place of abode, which right is effected by means of the Act of 1939, is not a right to any particular place of abode, but only a right to be supported and maintained by her husband. This right to sustenance and maintenance necessarily includes the means by which suitable shelter is to be provided her.

In Hill v. Hill, Weekly Notes 59 (Great Britain, 1916), brought forth by defendant as an expression of the policy of the law on this question (and cited in McKaig v. McKaig, supra), we find that a husband had left his wife, allowing her and their two children to live in the family residence. When he sought to sell the house from under her, the wife refused admission to the attending purchaser. The High Court of Justice, Chancery Division, granted a mandatory injunction directing the wife to deliver possession of the house to the husband or his agent, but suspended its operation until the husband provided a suitable home for the wife elsewhere. It is clear that the high court felt that the wife did not have a right to that particular house but had only a right to be provided with suitable shelter.

This case is explicit of the common law and it is not then difficult to find that this right of the wife to support and maintenance, including suitable shelter, was merely transposed by our legislature into terms of dollars and cents by the Act of 1939.

The Act of June 8, 1893, supra, allows a husband to sue his wife in a proceeding to recover his separate property. Ejectment between husband and wife is an action at law which will lie under this act. See Wagner v. Wagner, supra, and 13 Standard Pa. Practice §24, p. 289, wherein it is stated:

"Generally speaking, an action of ejectment lies by one spouse to remove the other spouse from property owned by the first spouse. A husband may sue his wife in ejectment."

Since the enactment of this statute, the only case of note in this jurisdiction which specifically has not allowed the action was Harris v. Harris, supra. In that case, the husband assaulted and beat the wife and then wilfully and maliciously deserted her. Seeking to consummate his desertion and abandonment he then proceeded under the Act of 1893 to eject her from their home, owned by him in his own right. In analyzing the husband's right to bring the action, Judge Gordon stated that:

". . . the ultimate question in all such actions is whether the right of possession is in the plaintiff or in the defendant. . . . The controlling question in the case before us, therefore, is whether this husband, who, in discharge of his legal obligation to provide a home for, and to maintain, his wife, has established their common domicile in one of his properties, and installed her in it, can, in disregard of his legal duty, desert and abandon her, leaving her in lawful possession, use and occupancy of it, and thereafter invoke the aid of the courts, in his effort to complete his unlawful desertion of her, to put her out upon the street": page 34.

His analysis found favor in Moser v. Granquist, supra, wherein it was stated, at page 306:

"A husband, who has deserted his wife, may not maintain ejectment against her to recover possession of his premises which he established as a common home at the time of the marriage."

In the Moser case, however, since plaintiff was a purchaser for value from the husband who had secured an ex parte foreign divorce prior to the sale, the court allowed the action. The Harris case was thereby distinguished.

The dissent in the Moser case which defendant cites as being in favor of her contention that she had a common law right to the instant premises, actually concerns itself solely with the disagreement with the majority opinion that the fact that plaintiff there was a purchaser for value from the husband distinguished the case from the law set forth in Harris v. Harris. It pointed out that if the foreign divorce were not recognized in Pennsylvania and the former husband and wife were still to be considered as married here, then the husband should not be allowed to enlist the aid of a Pennsylvania court to evict the wife. Accordingly, the dissent took exception to the trial court's refusal to pass upon the validity of the foreign divorce decree and the majority's approval thereof.

We point out that we do not now decide a matter which carries with it the overtones of the Harris case. In the instant situation we are faced with a consensual separation, each party seeming pleased to see the other go. There was no desertion, no malice and no abandonment. We also point out that defendant wife is presently enjoying the sum of $200 weekly paid to her by her husband under the support order granted by the municipal court. She received that order prior to the institution of this suit. She is not thereby impecunious and since both children are grown and married, all of that sum inures to her benefit. It is not too much to expect that she may shelter herself more than adequately at premises other than plaintiff's house.

Further, if she feels that the municipal court awarded her that sum, taking into account the fact that she was at that time enjoying the use of plaintiff's

house without cost, she may now seek to have the support order increased by reason of the fact that she must seek quarters elsewhere and expend money therefor: Act of June 19, 1939, P. L. 440, sec. 1, 17 PS §263; Barnes v. Barnes, supra; Commonwealth ex rel. Binney v. Binney, 146 Pa. Superior Ct. 374.

As to plaintiff's prayer for mesne profits in the form of rental value for the premises during the period of defendant's occupancy, we adopt the decision and discussion of the trial court. It was there noted that although ejectment is an action at law, it is very much akin to an equitable action (Cope v. Smith, 8 S. & R. 110; Angelcyk v. Angelcyk, 367 Pa. 381; Muia v. Herskowitz, 283 Pa. 163), and the action for mesne profits is almost exclusively governed by the equities involved: Ewalt v. Gray, 6 Watts 427; Ege v. Kille, 84 Pa. 333; Phillips v. Coast, 130 Pa. 572; Muthersbaugh v. McCane, 22 Pa. Superior Ct. 587; Pace v. Hoban, 27 Pa. Superior Ct. 574; Pittsburgh & Western R. R. v. Equitable R. E. Co., 88 Pitts. L. J. 417; Chaney v. Bamford, 91 Pitts. L. J. 108.

After a careful review of the evidence and after giving full and careful consideration to all factors entering into the question of mesne profits, it is our opinion that the most equitable disposition that could be made in the instant situation would be to disallow plaintiff the rental value of the premises for the period preceding the entry of the trial court's adjudication.

Accordingly, we find that plaintiff is entitled to possession of the premises at 5212 Gainor Road, Philadelphia, and to the rental value of said premises from the date of entry of the trial court's adjudication.

Plaintiff's exceptions are sustained only to the extent that he is entitled to the rental value of said premises from October 29, 1959. Defendant's exceptions are dismissed and judgment is entered in favor of plaintiff for possession of the said premises.