433 A.2d 859

**Judith Mazzochetti HACK, Appellant,**

v.

**Joseph Steven HACK**

**and**

**Joseph Steven Hack, Sr., and Government Employees Insurance Co.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1981.

Decided July 14, 1981.

Edward L. McCandless, Philadelphia, for appellant.

302

David M. McCormick, Thomas J. Finarelli, Thomas Martin, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant, Judith Mazzochetti Hack, filed an action in trespass for damages incurred as a result of personal injuries sustained in an automobile accident on May 27, 1971, when she was a passenger in a car driven by appellee Joseph Steven Hack, owned by Joseph Steven Hack, Sr., and insured by Government Employees Insurance Company.[1] Appellant averred in her complaint that the injuries she sustained were solely the result of the negligence of appellee. The Court of Common Pleas of Montgomery County granted appellee's motion for summary judgment on the ground that the action was barred by this Court's decision in *DiGirolamo v. Apanavage*, 454 Pa. 557, 312 A.2d 382 (1973) which affirmed the vitality of interspousal immunity.[2] The Superior Court affirmed without opinion. 261 Pa.Super. 437, 395 A.2d 985. This Court granted allowance of appeal.

Appellant and appellee Hack were unmarried at the time of appellee's alleged negligence. They married each other almost a year later on May 18, 1972. Approximately one year after their marriage, on April 26, 1973, appellant com-

1. The complaint was filed against each of these three parties, all of whom were represented in the trial court by the same counsel. However, prior to the trial court's determination of appellee Joseph Steven Hack's motion for summary judgment, Government Employees Insurance Company was dismissed as a party by agreement of counsel. Joseph Steven Hack, Sr. (referred to in some of the trial proceedings as John Steven Hack, Sr.), although nominally a party, has not filed a brief with this Court. Thus, Joseph Steven Hack is the only appellee on this appeal.

2. The trial court had previously dismissed the defendants' preliminary objections, which also raised the defense of interspousal immunity, because of defendants' failure to comply with a local rule of court regarding the filing of briefs.

menced this action. On September 9, 1974, appellant and appellee Hack were divorced. However, four months later, on January 16, 1975, they remarried. The record indicates that they continue to be married to each other at the present time.

On appeal, appellant argues that the interspousal immunity doctrine does not apply because of the peculiar factual and procedural posture of this case. First, she contends that appellee has waived the defense of interspousal immunity because the answer to the complaint, filed after the divorce and remarriage of appellant and appellee, pleads only the first marriage (now dissolved but in existence at the time the action was commenced) and not the second marriage (the only marriage in existence at the time the answer was filed). Cf. *Policino v. Ehrlich*, 478 Pa. 5, 385 A.2d 968 (1978) (interspousal immunity affirmative defense which may be waived). Appellant's second argument is that, even if the pleadings were proper, the defense of interspousal immunity should not apply where, as here, the marriage in effect at the time suit is instituted does not continue in effect throughout the litigation. Cf. *Turner v. Turner*, 487 Pa. 403, 409 A.2d 412 (1979) (claim not barred where couple married at time of accident but divorced at time of suit).

Adoption of either theory advanced by appellant would deny application of interspousal immunity as a defense in this action, but would leave unanswered the real question presented: whether interspousal immunity for personal injuries inflicted prior to or during marriage should continue as part of the common law of this Commonwealth. We reject the opportunity present on these facts to engraft exceptions onto an outmoded and unwarranted doctrine which denies a litigant, because of marital status and relationship, the opportunity to prove his or her claim in court. Instead, we conclude that a tortfeasor's immunity from liability because of his marital relationship with the injured party cannot be sustained on the basis of law, logic or public policy. Hence we abrogate the judicially-created doctrine of interspousal immunity.

I

This Court's most recent decision upholding the doctrine of interspousal immunity was rendered in *DiGirolamo v. Apanavage*, 454 Pa. 557, 312 A.2d 382 (1973) (Roberts, J., joined by Nix, J., dissenting, and Manderino, J., dissenting). The majority of the Court specifically refused "to re-examine the reasoning underlying the rule, as well as the public policy considerations" stating that "the instant decision is controlled by a specific state statute." Id., 454 Pa. at 563, 312 A.2d at 385. On an earlier occasion, however, this Court referred to the rule of interspousal immunity as "*both statutory and decisional*," and as "now based upon social reasons and public policy." *Meisel v. Little*, 407 Pa. 546, 548, 180 A.2d 772, 773 (1962) (emphasis in original). A reading of these cases makes clear that interspousal immunity has survived as a doctrine in this Commonwealth only because this Court has erroneously interpreted the statutes relating to married women, 48 P.S. § 1–1 et seq. (1965), and adhered to outmoded common law concepts.

A.

In *DiGirolamo v. Apanavage*, supra, and *Meisel v. Little*, supra, the Court focused on whether the provision of the Married Persons Property Act which permits one spouse to sue the other "to protect and recover her [or his] separate property," 48 P.S. § 111 (1965), includes an action in tort for unliquidated damages.[3] In answering this question in the negative, the majority overlooked relevant provisions and history of the statutes relating to married women.

The Married Persons Property Act, like similar statutes enacted in every state, was designed to abolish the common law "unity" of husband and wife, and thereby to secure to a married woman a separate legal identity from her husband with corresponding substantive and procedural rights. Pros-

3. Although referred to as the "Married Women's Property Act" in prior Court decisions and in popular parlance, the Act of June 3, 1887, P.L. 224, § 6, officially designates the statute as "the married persons property act."

ser, Law of Torts § 122 at 861 (4th ed. 1971). See *Marsteller v. Marsteller*, 93 Pa. 350 (1880).

At common law, the wife's identity merged upon marriage with that of her husband. Husband and wife were legally presumed to be one. That "one" was the husband, the wife having no independent rights. A married woman had no capacity to contract, to convey property, or to sue and be sued in her own name. 1 Blackstone, Commentaries * 442, 443; 2 id. * 433. In the words of one commentator,

"[a] combination of all these incidents made it impossible at common law for one spouse ever to be civilly liable to the other for an act which would be a tort if the relation did not exist. Where the act occurred before marriage, a cause of action arose. If the man was the tortfeasor, the woman's right would be a chose in action, which upon marriage the man would have the right to reduce to possession. This union in one person of the right-duty relation discharges the duty as a matter of substance, and there is besides the procedural difficulty that the husband would be both plaintiff and defendant. If the woman was the tortfeasor, the man's right would be a chose in action against the woman, whose duty upon marriage would devolve upon the husband as a derivative duty, which would be discharged by union of the right and duty in the same person; and there is the same procedural difficulty. Where the act occurs during coverture, the matter is complicated by other factors.... the right and the duty to make compensation, if any can be said to exist, would be united *eo instante* in the same person, and no cause of action could arise; and even if it could be said to arise, there would be the procedural difficulty of the husband's being both plaintiff and defendant. The same reasoning would apply to acts which injure the person, whether done by husband to wife or by wife to husband ...."

McCurdy, *Torts Between Persons in Domestic Relation*, 43 Harv.L.Rev. 1030, 1033–34 (1930). See *Kaczorowski v. Kal-*

*kosinski*, 321 Pa. 438, 442–43, 184 A. 663, 665 (1936); Prosser, Law of Torts § 122 at 859–60 (4th ed. 1971).[4]

The first Married Persons Property Act in this Commonwealth, enacted in 1848, guaranteed as a substantive right that

"every species and description of property, whether consisting of real, personal or mixed, which may be owned by or belong to any single woman, shall continue to be the property of such woman, as fully after her marriage as before; and all such property of whatever name or kind, which shall accrue to any married woman during coverture by will, descent, deed of conveyance or otherwise, shall be owned, used and enjoyed by such married woman as her own separate property . . . ."

Act of April 11, 1848, P.L. 536, § 6, 48 P.S. § 64 (1965). This language, which continues in force today as section 64 of Title 48, is supplemented by section 32.1 of that same title:

"Hereafter, a married woman shall have the same right and power as a married man to acquire, own, possess, control, use, convey, lease or mortgage any property of any kind, real, personal, or mixed, either in possession or in expectancy, or to make any contract in writing or otherwise, and may exercise the said right and power in the same manner and to the same extent as a married man."

4. Professor McCurdy has also stated:
"[A]lthough [the unity of spouses and the merger of legal identity] is the orthodox conception, it explains little.

The historical basis of the common law treatment of the relation of husband and wife is obscure, but it doubtless has several sources. One source is a mixture of the Bible and medieval metaphysics. A second is the position of the *pater-familias* in Roman law. A third, in personal matters the most important, is the natural law conception of the family as an informal unit of government, with the husband, physically the stronger, as the head. A fourth, and in property matters the most important, is feudalism."
McCurdy, supra, 43 Harv.L.Rev. at 1035.
For an excellent discussion of the interspousal immunity doctrine and its history in Pennsylvania, see Gedid, *Interspousal Immunity in Pennsylvania*, 18 Duq.L.Rev. 475 (1980).

Act of July 15, 1957, P.L. 969, § 1, 48 P.S. § 32.1 (1965). Both of these provisions granting to married women substantive property and contract rights are contained in Chapter 2, "Substantive Rights of Married Women," of Title 48.

In Chapter 3, "Remedies and Liabilities of Married Women," section 111 provides:

> "Hereafter a married woman may sue and be sued civilly, in all respects, and in any form of action, and with the same effect and results and consequences, as an unmarried person; but she may not sue her husband, except in a proceeding for divorce, or in a proceeding to protect and recover her separate property; nor may he sue her, except in a proceeding for divorce, or in a proceeding to protect or recover his separate property; nor may she be arrested or imprisoned for her torts."

Act of June 8, 1893, P.L. 344, § 3, as amended, Act of March 27, 1913, P.L. 14, § 1, 48 P.S. § 111 (1965). Section 111, read in light of the substantive rights provided in Chapter 2 which it is intended to effectuate, compels the conclusion that "a proceeding to recover her [or his] separate property" includes the right to bring an action in tort. Clearly a claim for unliquidated tort damages falls within the language, "property of any kind, real, personal, or mixed, either in possession or in expectancy," 48 P.S. § 32.1 (1965), and "[e]very species and description of property, whether consisting of real, personal or mixed . . . and all such property of whatever name or kind, which shall accrue . . . by will, descent, deed of conveyance or otherwise, shall be . . . separate property," 48 P.S. § 64 (1965). See *O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285, 289 (1964) ("chose in action is personal property"); *Berry v. Harmon*, 329 S.W.2d 784, 791 (Mo. 1959) (cause of action is "separate property" of married woman); *Prosser v. Prosser*, 114 S.C. 45, 102 S.E. 787, 788 (1920) ("a wife has a right in her person; and a suit for a wrong to her person is a thing in action; and a thing in action is property, and her property").

The history of section 111 also compels this result. Prior to the original enactment of section 111 in 1893, the statute

governing the capacity of a married woman to sue and be sued provided:

"A married woman shall be capable of entering into and rendering herself liable upon any contract relating to any trade or business in which she may engage, or for necessaries, and for the use, enjoyment and improvement of her separate estate, and for sueing and being sued, either upon such contracts or for torts done to or committed by her, in all respects as if she were a *feme sole*, and her husband need not be joined with her as plaintiff, or defendant, or be made a party to any action, suit or legal proceeding of any kind brought by or against her in her individual right; and any debt, damages or costs recovered by her in any such action, suit or proceeding shall be her separate property, and any debt, damages or costs recovered against her in any such action, suit or other proceeding shall be payable out of her separate property and not otherwise...."

Act of June 3, 1887, P.L. 332, § 2.[5] This language was interpreted as conclusively establishing that a married woman's right to recover for a tort is her separate property. *Walker v. Philadelphia*, 195 Pa. 168, 45 A. 657 (1900).[6]

The acts of 1893 and 1913 subsequently abbreviated this language to its present form to provide that a married woman may bring an action "to protect or recover her separate property." 48 P.S. § 111 (1965).[7] These acts did

5. The statute further provided:
   "Husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons for the protection and recovery of their separate property as unmarried persons."
   Act of June 3, 1887, P.L. 332, § 4.

6. The act of 1887 not only supports this conclusion but also makes clear what was implied by the previous statute: "[S]he [a married woman] shall also have the right, by action, to recover her separate earnings or property: *Provided,* That if her husband be the defendant, the action shall be in the name of a next friend." Act of April 11, 1856, P.L. 315, § 3.

7. The act of 1893 limited a married woman's right to bring an action against her husband "to protect or recover her separate property" to

not repeat the explicit provisions of the act of 1887 that a wife's husband "need not be joined with her as plaintiff, or defendant, or be made a party . . ." and that "any debt, damages or costs recovered by her in any such action, suit or proceeding shall be her separate property. . . ." Nevertheless, since the act of 1887, it has never been questioned that a wife may sue in her own name without joining her husband as a party. See *Walker v. Philadelphia*, supra, 195 Pa. at 173, 45 A. at 657 (1900). Similarly, there is no legitimate statutory basis upon which to doubt that the definition of "separate property" provided in the act of 1887 was intended to apply equally to the acts of 1893 and 1913. Certainly neither act states otherwise.

■ The remedial purpose of the Married Persons Property Act, to enlarge a married woman's capacity to acquire and dispose of property and to sue and be sued, requires that any ambiguity in the statute's language must be read to expand, not restrict, the rights of married women. This Court has so demonstrated by consistently holding that a married woman may maintain an action in equity to protect and gain possession of her separate property, even during the period when that right was statutorily abridged at law.[8] *Schomaker v. Schomaker*, 247 Pa. 444, 93 A. 460 (1915); *Ireland v. Ireland (No. 1)*, 244 Pa. 489, 90 A. 911 (1914); *Dorsett v. Dorsett*, 226 Pa. 334, 75 A. 593 (1910); *Heckman v. Heckman*, 215 Pa. 203, 64 A. 425 (1906); *McKendry v. McKendry*, 131 Pa. 24, 18 A. 1078 (1890). See also *Stemniski v. Stemniski*, 403 Pa. 38, 169 A.2d 51 (1961) and *Brobst v. Brobst*, 384 Pa. 530, 121 A.2d 178 (1956) (equity will enter-

those situations in which the husband "may have deserted or separated himself without sufficient cause, or may have neglected or refused to support her." Act of June 8, 1893, P.L. 344, § 3. The act of 1913, however, deleted this language, thereby permitting without restriction a married woman to sue her husband during coverture "to protect or recover her separate property." Act of March 27, 1913, P.L. 14, § 1, 48 P.S. § 111 (1965).

8. See Act of June 8, 1893, P.L. 344, § 3 (married woman could recover separate property only when husband may have deserted or separated himself from her without sufficient cause, or may have neglected or refused to support her. . . .").

tain action to enforce spouse's right in tenancy by entireties where one spouse wrongfully excludes the other).[9]

These holdings were premised on the theory that the Married Persons Property Act, "an enabling and remedial statute," *Heckman v. Heckman,* supra, 215 Pa. at 208, 64 A. at 426, was intended to enlarge the capacity of a married woman to sue and be sued by providing a cause of action at law, and not to restrict her capacity by eliminating equity as an alternative remedy. See *Dorsett v. Dorsett,* supra; *Heckman v. Heckman,* supra.

In addressing the meaning of the phrase "separate property" as used in the Married Persons Property Act, this Court has stated:

> "[T]he term is used 'not . . . in any technical, but in a broad and comprehensive, sense': *Morrish v. Morrish,* 262 Pa. 192, 198, [105 A. 83, 85 (1918)]."

*Geary v. Geary,* 338 Pa. 385, 12 A.2d 23 (1940). See also *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 503, 208 A.2d 193, 201 (1965) ("Monetary damages awarded a person in a lawsuit constitute property.").

■ Thus, in light of the statute's language, history and purpose, it is reasonable to conclude that the acts of 1893 and 1913, like the act of 1887, intended that "separate property" include a claim for unliquidated tort damages.

### B.

Neither appellant nor appellee attempts to justify retention of the common law doctrine of interspousal immunity.

---

**9.** The act of 1856 was the first statute to provide a married woman with a remedy at law against her husband. Prior to this time, an action in equity was the only means by which to enforce the substantive right to own, use and enjoy property guaranteed by the Act of April 11, 1848, P.L. 536, § 6. See *Heckman v. Heckman,* 215 Pa. 203, 64 A. 425 (1906). Equity jurisdiction, conferred upon the courts of this Commonwealth in 1836, recognized a wife's action against her husband even before the act of 1848. See *McKendry v. McKendry,* 131 Pa. 24, 18 A. 1078 (1890). As to separate estate in equity, see McCurdy, *Property Torts Between Spouses and Use During Marriage of the Matrimonial Home Owned By the Other,* 2 Vill.L.Rev. 447, 450–53 (1957).

Nevertheless, we address the social policy reasons which have traditionally been set forth as justifications for immunizing a tortfeasor-spouse from liability for his wrongs: "unity" of husband and wife; family harmony; prevention of collusion; and avoidance of trivial claims.[10]

The first of these reasons, "unity" of husband and wife, clearly cannot be a legitimate basis for retaining interspousal immunity. As previously stated, the very purpose of the Married Persons Property Act was to abolish the validity of this concept at law and to establish a wife's separate legal identity and capacity. Despite the failure of prior decisions to abrogate interspousal immunity, these decisions have candidly recognized that interspousal immunity cannot be justified on the "unity" theory. See, e. g., *Meisel v. Little,* supra, 407 Pa. 546, 180 A.2d 772 (1962); *Johnson v. Peoples First Nat'l Bank & Trust Co.,* 394 Pa. 116, 145 A.2d 716 (1958). Moreover, this Court has recently made clear that

"[m]odern conditions demand that courts no longer engage in the automatic and unsupported assumption that one's pecuniary or proprietary interest is identical to that of one's spouse."

*Estate of Grossman,* 486 Pa. 460, 473, 406 A.2d 726, 732 (1979). See *Kirchberg v. Feenstra,* 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) (unilateral right of husband to dispose of jointly owned property without wife's consent violates equal protection); *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (automatic exclusion of spousal adverse testimony invalid); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (marital couple not independent entity but association of two individuals).

Although some decisions have purported to rely upon family harmony as a social policy supporting interspousal

---

**10.** An additional justification that has been suggested, but long ago discarded, is that a spouse has an adequate alternative remedy in a criminal or divorce proceeding. This, of course, "obviously is untrue, since neither compensates for the damage done, or covers all the torts that may be committed [e. g., ordinary negligent injury]." Prosser, Law of Torts § 122 at 862–63 (4th ed. 1971).

immunity, see, e. g., *Johnson v. Peoples First Nat'l Bank & Trust Co.*, supra; *Kaczorowski v. Kalkosinski*, supra, 321 Pa. 438, 184 A. 663 (1936); *Koontz v. Messer*, 320 Pa. 487, 181 A. 792 (1935), the family harmony theory, like the "unity" theory, is irreconcilable with this Court's decisions. The interspousal immunity doctrine as applied in this Commonwealth has barred an injured party from maintaining a direct tort suit against his or her spouse but has not barred an action against a third party, who may then bring in the negligent spouse as an additional defendant. Thus, although a direct suit against a spouse is not permitted, the object of such a suit—recovery of damages from the spouse—may nonetheless be achieved through indirect means.

If appellant had been injured in a two car collision and had filed a tort action against the driver of the second car, who then brought in appellee as a third-party defendant, appellant would have been permitted to proceed to trial. If both the original defendant and appellee had then been found liable as joint tortfeasors, appellant would have been able to recover her full judgment from the original defendant, and the original defendant would then have been able to enforce a right of contribution from appellee. See *Fisher v. Diehl*, 156 Pa.Super. 476, 40 A.2d 912 (1945). If only appellee had been found liable, appellant would have been able to recover her full judgment directly from appellee. See *Ondovchik v. Ondovchik*, 411 Pa. 643, 192 A.2d 389 (1963). But see *Daly v. Buterbaugh*, 416 Pa. 523, 207 A.2d 412 (1964) (questioning *Ondovchik*).

Similarly, if appellant had been injured by the negligence of appellee while appellee was acting in the scope of his employment, and appellant had filed a tort action against appellee's employer who then brought in appellee as a third-party defendant, again unlike here, appellant would have been permitted to proceed to trial. Upon a finding of liability, the employer, responsible only on the theory of respondeat superior, would have been able to recover fully

from appellee. See *Koontz v. Messer*, supra, 320 Pa. 487, 181 A. 792 (1935).[11]

The only significant factor which presently operates to bar one spouse's suit against the other is the absence of the fortuitous circumstance of possible third-party liability. Clearly the presence or absence of a third party should not determine the rights and remedies of spouses *inter se*. Indeed, if the theory of family harmony were a valid justification for interspousal immunity, there could be no basis to allow recovery in any case.

In fact, where the tort is a negligent one, a lawsuit is less likely to impair family harmony than where the action is for breach of contract or conversion of property. These latter actions, unlike a claim of negligence, typically involve allegations of intentional wrongdoing and are not covered by insurance. Hence they are more likely to be disruptive of the marital relationship. Yet there is no question that such actions have been permitted at law since enactment of the Married Persons Property Act of 1856 and in equity even before then. See supra note 9.

The facts of this case themselves belie any theory that interspousal tort litigation is inherently conducive to family disharmony. Although appellant and her husband were divorced approximately one year and four months after commencement of this action, the record does not indicate that the divorce was in any respect caused by marital

11. Still another means by which an injured spouse may recover indirectly from a tortfeasor-spouse is where the tortfeasor has died and an action is brought against his estate. See *Johnson v. Peoples First Nat'l Bank and Trust Co.*, 394 Pa. 116, 145 A.2d 716 (1958). See also *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 184 A. 663 (1936) (parent of deceased wife permitted to bring wrongful death action against estate of deceased husband). The rationale given for permitting a widow or widower to maintain an action against the estate of her or his spouse is that, upon death, the marriage no longer exists and hence domestic harmony cannot be disturbed. Of course, this explanation overlooks the fact that a "family" is typically composed of more than just a husband and wife. In theory, tort claims by a spouse against a finite estate have no less potential for disrupting family harmony than direct actions brought during the spouse's lifetime.

discord resulting from the litigation. In fact, the parties' remarriage during the pendency of this litigation only four months after their divorce and their continued marriage to each other would indicate that the present action has not affected their marital felicity.

Especially, where as here the defendant-spouse is indemnified by insurance, there is no legitimate basis to believe that an action will adversely affect family harmony. If anything, the converse may be true. Denial of the action may itself promote marital discord by causing the husband and wife to rely on their own funds to pay expenses that otherwise would be paid for by insurance. See *Falco v. Pados*, 444 Pa. 372, 380–81, 282 A.2d 351, 355 (1971); Prosser, The Law of Torts § 122 at 868 (4th ed. 1971). Since the very purpose of liability insurance is compensation, its presence argues in favor of permitting an injured individual to establish the liability of his or her tortfeasor-spouse. Certainly it is "illogical to allow a wife to sue her husband's employer for injuries for which he is vicariously responsible, and to deny her a right to sue her husband for injuries sustained in an automobile accident in order to collect from his insurer on a contractual responsibility." Ford, *Interspousal Liability for Automobile Accidents In the Conflict of Laws; Law and Reason Versus the Restatement*, 15 U.Pitt.L.Rev. 397, 417 (1954).

The third rationale advanced in support of interspousal tort immunity is that husband and wife may act collusively to recover unjustifiably from an insurance carrier. See, e. g., *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966); *Parks v. Parks*, 390 Pa. 287, 135 A.2d 65 (1957). This rationale, however, is analytically inconsistent with the previous argument that tort litigation will disrupt family harmony. Moreover, it is wholly speculative.

Just as this Court rejected the possibility of collusion as justification for continuation of parental immunity, *Falco v. Pados*, supra, so we reject it as justification for perpetuating interspousal immunity. See also *Cipolla v. Shaposka*, 439

Pa. 563, 566, 267 A.2d 854, 856 (1970) ("it is Pennsylvania's policy that its guests should be permitted to recover for injuries caused by their hosts' negligence"). The laws of contract and evidence are ample protection against any danger of fraud or collusion. See *Great American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 412 Pa. 538, 194 A.2d 903 (1963) and *Puller v. Puller*, 380 Pa. 219, 110 A.2d 175 (1955) (family exclusion clause in insurance contract).

This Court's admonition in abolishing parental immunity applies equally here:

> " 'In a day when automobile accidents are unfortunately becoming so frequent and the injuries suffered by the passengers are often so severe, it seems unjust to deny the claims of the many because of the potentiality for fraud by the few. Moreover, there is something wanting in a system of justice which permits strangers, friends, relatives and emancipated children to recover for injuries suffered as a result of their driver's negligence but denies this right to the driver's spouse and minor children who are also passengers in the same vehicle.' [*Immer v. Risko*, 56 N.J. 482, 495, 267 A.2d 481, 488 (1970)]
>
> .    .    .    .    .
>
> In the last analysis it is much to be preferred that we depend upon the efficacy of the judicial process to ferret out the meritorious from the fraudulent rather than using a broad broom to sweep away a class of claims, a number of which are admittedly meritorious."

*Falco v. Pados*, supra, 444 Pa. at 381, 282 A.2d at 355–56.

The final justification for interspousal immunity, avoidance of trivial claims, is subject to the same analytical weakness as the argument regarding possible collusion and deserves the same response. The solution to fraudulent or trivial claims is not to prohibit all claims including the meritorious, but rather to rely on the judicial process to deny both the fraudulent and the frivolous. The adjudicatory process, which resolves causes on a case-by-case basis by

applying legal principles to concrete factual situations, is well equipped to consider customs of human conduct.[12]

As has been demonstrated, none of the justifications advanced in support of retention of interspousal immunity is persuasive. Thus we adopt here, as we have elsewhere, "the prevailing philosophy that liability follows tortious conduct." *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 594, 305 A.2d 877, 882 (1973). See also *Mayle v. Pennsylvania Dep't of Highways*, 479 Pa. 384, 388 A.2d 709 (1978); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Flagiello v. Pennsylvania Hospital*, supra.

## II

■ This Court has full authority, and the corresponding duty, to examine its precedents to assure that a rule previously developed is not perpetuated when the reason for the rule no longer exists and when application of the rule would cause injustice. On previous occasions this Court has not hesitated to reconsider precedent in light of current social conditions and public policy. See, e. g., *Soffer v. Beech*, 487 Pa. 255, 409 A.2d 337 (1979) (abandoned common law rule that actual possession is prerequisite to action in ejectment); *Estate of Grossman*, 486 Pa. 460, 406 A.2d 733 (1979) (abandoned per se rule disqualifying testimony of the spouse of a surviving interested party to a transaction with a decedent); *Mayle v. Pennsylvania Dep't of Highways*, 479 Pa. 384, 388 A.2d 709 (1978) (abrogated sovereign immunity); *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) (abrogated local governmental immunity); *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286

12. For example, the defenses of consent and assumption of the risk may have particular significance in negligence actions between spouses. See Restatement (Second) of Torts § 895F (1979); id., § 895G comment k; McCurdy, *Personal Injury Torts Between Spouses*, 4 Vill.L.Rev. 303, 338 (1959); Note, *Litigation Between Husband and Wife*, 79 Harv.L.Rev. 1650, 1660–65 (1966). See also *Commonwealth v. George*, 358 Pa. 118, 128, 56 A.2d 228, 231 (1948) (absent desertion without cause or neglect, "method whereby a husband secures to his wife and family the necessities of life is not a proper subject for judicial consideration and determination").

(1972) (rejected rule that psychiatric evidence is inadmissible in murder prosecution for purposes of determining whether defendant acted in heat of passion); *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972) (rejected prior cases concerning scope of permissible remarks by a judge to jury); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (abrogated parental immunity); *Conestoga National Bank v. Patterson*, 442 Pa. 289, 275 A.2d 6 (1971) (reversed prior rule regarding procedure afforded protesting banks in branch bank application situations); *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970) (rejected prior rule imputing contributory negligence of driver to owner-passenger); *Papieves v. Kelly*, 437 Pa. 373, 263 A.2d 118 (1970) (recovery permitted for emotional distress resulting from intentional or wanton misconduct); *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) (abolished impact rule); *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968) (rejected prior limitation on a landlord's liability for defective conditions); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968) (eliminated vertical privity requirement); *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1967) (effect of release in third-party action); *Beckham v. Travelers Ins. Co.*, 424 Pa. 107, 225 A.2d 532 (1967) (abandoned distinction between accidental means and accidental results); *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966) (adopted Restatement, Second, Torts § 402A); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (abrogated charitable immunity); *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964) (rejected lex loci rule of conflicts of law); *Olin Mathieson C. Corp. v. White C. Stores*, 414 Pa. 95, 199 A.2d 266 (1964) (Pennsylvania Fair Trade Act unconstitutional); *Campbell v. Fiorot*, 411 Pa. 157, 191 A.2d 657 (1963) (repudiated prior rule regarding evidence of skidding car); *Catherwood Trust*, 405 Pa. 61, 173 A.2d 86 (1961) (abolished Pennsylvania Rule of Apportionment); *Sinkler v. Kneale*, 401 Pa. 267, 164 A.2d 93 (1960) (rejected prior case law which held infant does not have a cause of action for prenatal injuries); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958) (changed felony murder rule).

The common law, which this Court is charged with the obligation to develop, is a constant "quest for reconciling authority with reason." Pound, *What Is the Common Law,* 4 U.Chi.L.Rev. 176, 186 (1937). This Court stated in *Estate of Grossman,* supra:

> "It is the essence of common law courts today as in earlier times to view the body of the law as a living and developing legal system designed to serve societal needs in elevating the life and utility of the law rather than as a static set of rules.
>
> .  .  .  .  .  .
>
> 'Precedent speaks for the past; policy for the present and the future. The goal which we seek is a blend which takes into account in due proportion the wisdom of the past and the needs of the present.' Schaefer, *Precedent and Policy,* 34 U.Chi.L.Rev. 3, 24 (1966)."

486 Pa. at 470–71, 406 A.2d at 730. See also Cardozo, The Growth of the Law 136–37 (1924); Cardozo, The Nature of the Judicial Process 150–51 (1921); Holmes, *The Path of the Law,* 10 Harv.L.Rev. 457 (1897).

■ In accordance with these principles, we conclude that interspousal tort immunity is premised upon outmoded theories unsupported by today's social conditions and public policy and hence has no justification in contemporary society.[13] Our conclusion is consistent with our duty to implement justice:

---

**13.** This view is shared by the majority of jurisdictions and by virtually all legal commentators. For the position of various jurisdictions see Annot., 92 A.L.R.3d 901 (1979) and Appendix. Twenty-six jurisdictions have completely abrogated interspousal tort immunity and eleven jurisdictions have partially abolished the immunity. The most recent jurisdictions to completely abrogate interspousal immunity include Iowa, Massachusetts, Maine and Nebraska. *Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979); *Brown v. Brown,* —— Mass. ——, 409 N.E.2d 717 (1980); *MacDonald v. MacDonald,* 412 A.2d 71 (Me. 1980); *Imig v. March,* 203 Neb. 537, 279 N.W.2d 382 (1979).

Commentators include: Ford, *Interspousal Liability for Automobile Accidents In the Conflict of Laws: Law and Reason Versus the Restatement,* 15 U.Pitt.L.Rev. 397 (1954); Gedid, *Interspousal Immunity in Pennsylvania,* 18 Duq.L.Rev. 475 (1980); 1 Harper & James, The Law of Torts § 8.10 (1956); McCurdy, *Personal Injury Torts*

"One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, 'Law must be stable, and yet it cannot stand still.' "

*State v. Culver*, 23 N.J. 495, 505, 129 A.2d 715, 721, cert. denied, 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957).

Having concluded that marital relationship alone may not deny a party redress for injury, we abolish the defense of interspousal immunity as a bar to suits in the courts of this Commonwealth.

Order of the Superior Court reversed, order of the trial court granting summary judgment vacated, and record remanded for proceedings consistent with this opinion.

O'BRIEN and NIX, JJ., concuring in the result.

APPENDIX: Position of Other Jurisdictions with regard to Doctrine of Interspousal Tort Immunity.[1]

*Between Spouses*, 4 Vill.L.Rev. 303 (1959) and *Property Torts Between Spouses and Use During Marriage of the Matrimonial Home Owner By the Other*, 2 Vill.L.Rev. 447 (1957); Prosser, Law of Torts § 122 at 863–64 (4th ed. 1971).

1. This compilation is based in part upon Annot., 92 A.L.R.3d 901 (1979).

## COMPLETELY ABROGATED

| | |
|---|---|
| Alabama | Minnesota |
| Alaska | Nebraska |
| Arkansas | New Hampshire |
| California | New Jersey |
| Colorado | New York [3] |
| Connecticut | North Carolina |
| Idaho | North Dakota |
| Illinois [2] | Oklahoma |
| Indiana | South Carolina |
| Iowa | South Dakota |
| Kentucky | Washington |
| Maine. | West Virginia |
| Massachusetts | Wisconsin |
| Michigan | |

## MODIFIED [4]

| | |
|---|---|
| Arizona | Oregon |
| Kansas | Rhode Island |
| Maryland | Texas |
| Missouri | Vermont |
| Nevada | Virginia |
| New Mexico | |

## OLD COMMON LAW RULE

| | |
|---|---|
| Delaware | |
| District of Columbia | Montana |
| Florida | Ohio |
| Georgia | Oregon |
| Hawaii | Tennessee |
| Louisiana [5] | Utah |
| Mississippi | Wyoming |

2. Judicially abolished but statutorily reinstated.

3. Statutorily abolished. All other states which have abolished interspousal immunity have done so by judicial decision.

4. These jurisdictions have abrogated the immunity in certain classes of cases based upon the kind of tort and the marital status of the parties at time of the actionable conduct as well as at time of suit.

5. Clearly mandated by statute.