**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| KELVIN SUTTON AND CLIFFORD SMITH, ON BEHALF OF THE INMATE GENERAL POPULATION, S.C.I., FRACKVILLE | : | No. 4 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the Commonwealth Court at No. 314 MD 2018 dated 11/28/18 |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TABB BICKELL, MICHAEL WENEROWICZ, AND THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS | : | |
| | : | |
| APPEAL OF: KELVIN SUTTON | : | SUBMITTED: November 20, 2019 |

**OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: November 20, 2019**

In this direct appeal, we address whether the Department of Corrections acted permissibly in mandating that certain types of boots possessed by inmates be surrendered or sent home.

**I. Background**

In February 2018, a Pennsylvania Department of Corrections prison guard died after an inmate attacked him and kicked him in the head with Timberland boots. Later that month, the Department suspended commissary sales of such boots. Thereafter, in March 2018, Tabb Bickell, Executive Deputy Secretary of Institutional Operations,

Michael Wenerowics, Deputy Secretary of the Eastern Region, and Trevor Wingard, described as "A/Deputy Secretary Western Region," issued a memorandum to all inmates stating that, effective immediately, Timberland and Rocky boots could no longer be purchased by prisoners. The memorandum added:

> Inmates that have these boots . . . in their possession will have until Friday, May 11, 2018, to make arrangements to send them home or turn them in. Inmate boot orders that were placed prior to the suspension of boot sales on February 21, 2018, and that have not been received/issued will be returned to the vendor upon receipt. The inmate will receive a full refund for the cost of the boots. Any boots found after Friday, May 11, 2018, will be considered contraband.

> \* \* \* \* \*

> Inmates [for whom] state issued boots are unavailable . . . due to sizing and have been issued a boot or walking shoe in place of the standard issue state brown boots may retain those issued boots/shoes unless the boots are Timberland or Rocky boots. If they are Timberland or Rocky boots, they will be replaced with a security-approved shoe or boot.

> The Department will be working . . . in the coming weeks to offer a significant increase in the variety of sneakers being offered.

Pennsylvania Department of Corrections Memorandum to All Inmates, dated March 26, 2018 (emphasis omitted) (the "Memorandum").

Appellant, an inmate at SCI-Frackville, filed papers in the Commonwealth Court styled as a motion for "Special Relief and Injunctions," which the court treated as a petition for review directed to its original jurisdiction (the "Petition").[1] The Petition named as respondents Executive Deputy Secretary Bickell, Deputy Secretary Wenerowics, and the Department of Corrections (collectively, the "Department").

---

[1] Appellant has acted *pro se* throughout this litigation. The Petition listed inmate Clifford Smith as an additional petitioner. As he has not appealed to this Court, and for ease of discussion, the procedural history is discussed herein only in reference to Appellant.

In the Petition, Appellant alleged that he owned a pair of Timberland boots which he previously purchased through the prison's commissary for approximately $99.00, which was deducted from his inmate account. He averred that, per the Memorandum's requirements, his boots, and those of approximately 50,000 other inmates, would effectively be confiscated without a refund. He maintained that this action would be contrary to the Department's policy statement relating to personal property and commissary purchases, as set forth in a directive known as "DC-ADM 815."

Appellant stated causes of action under the federal Due Process Clause, *see* U.S. CONST. amend. XIV, §1;[2] and the Unfair Trade Practices and Consumer Protection Law, *see* 73 P.S. §§201-1 to 201-9.3 (the "UTPCPL"). He additionally included a claim sounding in tort, namely, the intentional tort of conversion. Appellant sought injunctive relief in the form of an order directing the Department to return his boots or, in the alternative, refund the purchase price.[3]

The Department requested a stay of the litigation, noting that numerous similar petitions had been filed, and that the Department had designated another matter,

---

[2] Appellant also mentions due process under the state charter, *see* PA. CONST. art. I, §9, but in his argument he does not rely on that provision as an independent basis for relief.

[3] This summary of the relief requested is based on the litigation as it proceeded. Appellant initially filed the Petition before May 11, 2018, while he was still in possession of his boots. At that time, he sought preliminary injunctive relief to prevent them from being confiscated while he litigated his claim. When the May 11th date passed with no court action, however, the Department placed his boots in storage pending the outcome of this dispute, thereby rendering moot Appellant's request for a preliminary injunction. Accordingly, in later filings – such as his response to the Department's preliminary objections, *see* Dkt. Item No. 13 – Appellant sought either the return of his boots or a refund of their purchase price rather than an injunction.

The Department has not objected to Appellant's adjustments in this regard. In any event, the details of this history do not affect our resolution of the issues presented.

*O'Toole v. Department of Corrections*, No. 228 M.D. 2018 (Pa. Cmwlth.), as the lead case. The Commonwealth Court initially granted the request, staying the matter pending its decision in *O'Toole*. After Appellant requested reconsideration, the court vacated the stay and directed the Department to file a responsive pleading.

The Department filed preliminary objections in the nature of a demurrer, asserting, *inter alia*, that: the Memorandum gave Appellant constitutionally adequate notice for due process purposes, as it provided him with an opportunity to send his boots home; Appellant failed to allege that the Department had engaged in any conduct prohibited by the UTPCPL, such as deceptive representation or the breach of a warranty; and the Department and its employees are protected by sovereign immunity from claims based on alleged intentional torts.

In a two-page filing, the Commonwealth Court sustained the Department's demurrer and dismissed the Petition. *See Sutton v. Bickell*, No. 314 M.D. 2018, Memorandum and Order, *slip op.* at 1 (Pa. Cmwlth. Nov. 28, 2018). The court explained that, per the Petition's factual averments: the confiscation of Appellant's boots was accomplished pursuant to statewide policy; Appellant lacked a protected property interest in possessing Timberland boots while in prison; DC-ADM 815 did not create any rights in any person; the Department has broad discretion to modify its policies to address evolving security needs; Appellant failed to plead facts sufficient to support a claim of conversion and, moreover, the Department is protected by the doctrine of sovereign immunity from liability for intentional torts; and Appellant failed to plead facts sufficient to set forth a claim under the UTPCPL. *See id.* at 2. In stating its holdings with regard to due process and sovereign immunity, the court relied on its recent decision in the *O'Toole* matter, which had been published in the interim. *See O'Toole v. Dep't of Corr.*, 196 A.3d 260 (Pa. Cmwlth. 2018).

## II. Arguments and analysis

Because this is an appeal from an order sustaining preliminary objections in the nature of a demurrer, Appellant's well-pleaded factual allegations will be accepted as true for purposes of the following discussion. *See Sernovitz v. Dershaw*, 633 Pa. 641, 645 n.2, 127 A.3d 783, 785 n.2 (2015). As described above, Appellant set forth several causes of action in the Petition. The argument section of his brief to this Court also includes a claim under the Eighth Amendment and a brief reference to the Equal Protection Clause. These issues, however, have not been preserved for review. *See* Pa.R.A.P. 302(a). Thus, we will only address Appellant's arguments based on the Due Process Clause, *see* U.S. CONST., amend XIV, §1 (stating that no state may "deprive any person of life, liberty, or property, without due process of law"), conversion, and the UTPCPL.

## A. Procedural due process

Appellant initially argues that the Department's actions failed to comport with due process requirements attendant to the deprivation of a property right. *See* Brief for Appellant at 6-7. Procedural due process "is a flexible concept which 'varies with the particular situation.'" *Bundy v. Wetzel*, 646 Pa. 248, 258, 184 A.3d 551, 557 (2018) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984 (1990)). Its "central demands" are "an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Commonwealth v. Maldonado*, 576 Pa. 101, 108, 838 A.2d 710, 714 (2003)). Such requirements, however, "are implicated only by adjudications, not by state actions that are legislative in character." *Small v. Horn*, 554 Pa. 600, 613, 722 A.2d 664, 671 (1998).

> Adjudicative agency actions are those that affect one individual or a few individuals, and apply existing laws or regulations to facts that occurred prior to the adjudication. Agency actions that are legislative in character

result in rules of prospective effect and bind all, or at least a broad class of, citizens.

*Id.* at 613 n.12, 722 A.2d at 671 n.12 (citing 2 Pa.C.S. §101 (defining administrative law terms)).

In *Small*, the plaintiffs challenged two bulletins issued by the Department, which modified DC-ADM 815 so that all inmates were required to wear clothing in the nature of prison uniforms rather than civilian clothing. These changes were made in an effort to enhance prison security and public safety inasmuch as civilian clothing had played a role in several inmates escaping during the prior month. The *Small* Court concluded that the bulletins were legislative in character and did not constitute an adjudication, meaning that the plaintiffs could not succeed on a procedural due process theory. *See id.* at 605, 722 A.3d at 667.

*Small* controls the outcome of the present claim. Like the bulletins at issue in that matter, the Memorandum sets forth rules of prospective effect that bind a broad class of individuals in Pennsylvania state prisons. It does not apply existing laws or regulations in a manner that affects only one or several citizens. Thus, procedural due process principles are not implicated by the Petition's averments.

### B. Substantive due process

Appellant also forwards a substantive due process argument. He maintains that the policy embodied in the Memorandum is invalid under due process norms because it deprives him of his property rights and it is unrelated to a genuine penological interest. He argues that it represents an "exaggerated response" to the killing of a prison guard by a single inmate. *Turner v. Safley*, 482 U.S. 78, 90, 107 S. Ct. 2254, 2262 (1987).

Under the heading of "substantive due process," the Due Process Clause not only guarantees a fair process, but "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Commonwealth v.*

*Bullock*, 590 Pa. 480, 491, 913 A.2d 207, 214 (2006) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719-20, 117 S. Ct. 2258, 2267 (1997)). With that said, prison administrators are "afforded wide-ranging deference in adopting and carrying out policies that in their reasonable judgment are necessary to preserve order, discipline, and security." *DeHart v. Horn*, 694 A.2d 16, 19 n.9 (Pa. Cmwlth. 1997) (citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S. Ct. 1861, 1878 (1979)); *Peterkin v. Jeffes*, 855 F.2d 1021, 1032 (3rd Cir. 1988)); *see also Bell*, 441 U.S. at 546-57, 99 S. Ct. at 1878. Indeed, the Supreme Court has explained that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves. It is in the light of these legitimate penal objectives that a court must assess challenges to prison regulations based on asserted constitutional rights of prisoners." *Pell v. Procunier*, 417 U.S. 817, 823, 94 S. Ct. 2800, 2804 (1974); *see also Bell*, 441 U.S. at 546-47, 99 S. Ct. at 1878 ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); *Bundy*, 646 Pa. at 260, 184 A.3d at 558 (observing that inmates' interests must be balanced against the prison's unique institutional concerns, including maintaining order, safety, and discipline (quoting *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011))).

Relying on precedent, the Supreme Court in *Turner* expressed, initially, that prison inmates retain certain "fundamental constitutional guarantee[s]," including the right to petition the government for the redress of grievances, the right to be free of invidious racial discrimination, and the guarantee of due process. *Turner*, 482 U.S. at 84, 107 S. Ct. at 2259. With that said, *Turner* noted, as well, that

> courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. The problems of prisons in America are complex and intractable, and, more to the point, they are not readily

> susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.

*Id.* at 84-85, 107 S. Ct. at 2259 (internal quotation marks and citations omitted).

In light of this tension between judicial restraint and the courts' duty to enforce the Constitution, *Turner* concluded that prison rules which limit inmates' constitutional rights are valid so long as they are "reasonably related to legitimate penological interests." *Id.* at 89, 107 S. Ct. at 2261. The Court explained that this reasonable-relation litmus should be evaluated pursuant to a four-part test, which asks whether: (1) a rational connection exists between the restriction and the legitimate, neutral interests put forth by the government; (2) alternative means of exercising the rights remain open to the inmate; (3) accommodating the asserted right will have an adverse impact on guards, other inmates, and the allocation of prison resources; and (4) no ready alternative is available to the prison which would have only a minimal cost to valid penological interests while fully accommodating the prisoners' rights. *See id.* at 89-91, 107 S. Ct. at 2262.

In assessing these factors, the Department offers that: (1) based on the incident in which boots of the style prohibited by the Memorandum contributed to the killing of a prison guard, allowing such boots to remain in the possession of inmates poses a substantial risk to the safety of prison employees and other inmates; (2) the only alternative available to the Department is to allow the inmates to retain ownership of the boots but have them sent home – an option which the Memorandum allows; (3) to accommodate the asserted rights of inmates the Memorandum would have to be rescinded, which in turn would re-impose the safety risks mentioned above; and (4)

there is no obvious, ready alternative available to the Department to address such safety concerns while also allowing inmates to retain possession of the type of boots in question.  *See* Brief for Appellees at 10-11.

For his part, Appellant, as noted, seeks to undermine the above by characterizing the killing of the prison guard as an isolated incident to which the Department has overreacted.  He thus describes the seizure of his boots as constitutionally "arbitrary and irrational."  Brief for Appellant at 10.

We cannot agree.  The violent killing of a corrections employee is undoubtedly among the most serious safety breaches that can occur in a prison setting, and Appellant does not dispute that the boots in question played a role in that occurrence.  Moreover, Appellant does not refer to any authority suggesting that prisons are required to wait for multiple such incidents to transpire before taking action designed to prevent further violence of the same type, and we are unaware of any.  To the contrary, this Court has explained that the Department "must enforce reasonable rules of internal prison management to ensure public safety and prison security," and that such rules "must be modified as conditions change, different security needs arise, and experience brings to light weaknesses in current security measures."  *Small*, 554 Pa. at 610-11, 722 A.2d at 669-70.  *See generally O'Toole*, 196 A.3d at 268 ("[A]n inmate's potential use of Timberland or Rocky boots as a deadly weapon against Department staff is a rational safety reason for the Department[] . . . to change [its] boot-style policy.").

Finally, the Petition lacks any averments tending to contradict the Department's analysis of the *Turner* factors.  This omission is material because the burden is not on the Department to prove the validity of a challenged prison regulation, but on the inmate to disprove it.  *See Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S. Ct. 2162, 2168 (2003).  Accordingly, we hold that, to the extent a prisoner's property rights have been

limited by the measures contained in the Memorandum, those limitations are reasonably related to legitimate penological interests. It follows that the allegations in the Petition are insufficient to support a claim based on substantive due process.

## C. Conversion

Although articulated under the "due process" heading of his brief, Appellant also advances a contention that the Department is not protected by sovereign immunity from liability based on the tort of conversion, because tortious conduct relating to the care and custody of personal property is expressly exempted by the sovereign immunity statute. *See* 42 Pa.C.S. §8522(b)(3).

Under the Pennsylvania Constitution, the Commonwealth enjoys sovereign immunity from lawsuits. *See* PA. CONST. art. I, §11; 1 Pa.C.S. §2310; *Scientific Games Int'l, Inc. v. Dep't of Revenue*, 620 Pa. 175, 181 n.3, 66 A.3d 740, 743 n.3 (2013). Unless waived, immunity attaches for actions undertaken within the scope of the Commonwealth party's duties. *See, e.g.*, *Justice v. Lombardo*, ___ Pa. ___, ___, 208 A.3d 1057, 1067 (2019). The Legislature has waived immunity in relation to claims "for damages arising out of a [Commonwealth party's] negligence acts" in certain enumerated classes. 42 Pa.C.S. §8522(a); *see id.* §8522(b) (listing categories of negligent acts for which liability may be imposed).[4]

---

[4] This Court has not expressly stated whether sovereign immunity may be raised in a demurrer. *See* Pa.R.C.P. No. 1028 (relating to preliminary objections); *cf. Wurth by Wirth v. City of Phila.*, 136 Pa. Cmwlth. 629, 637-38, 584 A.2d 403, 407 (1990) (holding that governmental immunity can be raised by demurrer where it clearly applies); *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 517-18, 235 A.2d 576, 579 (1967) (recognizing the inefficiency involved in requiring an answer in addition to preliminary objections when the claim is plainly meritless). Nevertheless, a plaintiff waives his ability to assert a potential procedural defect along these lines where, as here, he fails to object to it. *See, e.g.*, *Duquesne Slag Products Co. v. Lench*, 490 Pa. 102, 105, 415 A.2d 53, 54 (1980).

The tort of conversion of property does not sound in negligence; it embodies a claim of intentional wrongdoing. *See Hack v. Hack*, 495 Pa. 300, 313, 433 A.2d 859, 866 (1982). Nowhere in the Petition is there an averment that the Department acted negligently. Thus, the Department's enforcement of its requirement that the boots in question to be sent home or relinquished cannot constitute the type of negligent conduct for which the General Assembly has waived its immunity from liability.

We recognize that intentional conduct may fall within, or outside, the scope of a state employee's duties, depending on the circumstances. *See Lombardo*, ___ Pa. at ___, 208 A.3d at 1073. Here, however, the Memorandum setting forth the new policy regarding possession of Timberland and Rocky boots was aimed at enhancing prison security and, as such, it was clearly issued within the scope of the Commonwealth employees' duties. More to the point, even when we read the prison-drawn, *pro se* Petition with some latitude, as is our custom, *see Bundy*, 646 Pa. at 261, 184 A.3d at 559, it lacks any averment to the contrary. Thus, we agree with the Commonwealth Court's decision to sustain the Department's demurrer as to this count of the Petition.

### D. Consumer protection law

As discussed, Appellant alleged before the Commonwealth Court that the Department's actions were contrary to the UTPCPL. That enactment prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined in the law and in regulations promulgated thereunder. 73 P.S. §201-3. Examples of such prohibited conduct include passing off one's goods or services as those of another, using deceptive designations of geographic origin in connection with goods and services, disparaging the goods and services of another via false or misleading representations of fact, false advertising, and generally engaging in

any other deceptive conduct which creates a likelihood of confusion by the consumer. *See id.* §201-2(4).

Appellant did not include in the Petition any factual allegations of this type. He only alleged, in general terms, that the Department's decision to accept money for the boots and then fail to supply a refund upon their confiscation "is . . . an unfair [c]onsumer [p]ractice." Petition for Review, at 4, ¶11. Presently, moreover, he only mentions the UTPCPL in passing, suggesting that it was violated by the Department's failure to provide a pre- or post-deprivation procedure that would have revealed its decision not to compensate inmates for their boots to be "[i]llegitimat[e]". Brief for Appellant at 8. This argument, which does not reference any aspect of the UTPCPL or otherwise identify a specific prohibition contained in that enactment, is so undeveloped as to be the equivalent of no argument at all. *See Commonwealth v. D'Amato*, 579 Pa. 490, 504, 856 A.2d 806, 814 (2004). As such it is waived.

## III. Conclusion

For the reasons given above, the order of the Commonwealth Court is affirmed.


Justices Baer, Todd, Donohue, Dougherty and Mundy join the opinion.

Justice Wecht files a dissenting opinion.